Hillsborough,
No. 5693.

AETNA INSURANCE COMPANY

*v.*

STATE MOTORS, INC. *& a.*

Argued April 3, 1968.
Decided July 17, 1968.

*Devine, Millimet, McDonough, Stahl & Branch* and *Robert A. Backus* (*Mr. Backus* orally), for the plaintiff, Aetna Insurance Company.

*McLane, Carleton, Graf, Greene & Brown* and *James R. Muirhead* (*Mr. Muirhead* orally), for the defendant, State Motors, Inc.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* for the defendant American Cab Co., filed no brief.

LAMPRON, J. Petition for declaratory judgment brought by Aetna against its insured, State Motors, to determine the rights of the parties relating to an action brought by American Cab against the insured. Hearing before *Loughlin,* J. resulted in findings, rulings and a decree that Aetna was not obligated to defend or pay any judgment in this action. State Motor's

exceptions to the Court's granting of certain requests, its denial of some and failure to rule on others, as well as to the Court's decree were reserved and transferred.

American Cab, on January 16, 1965, brought an action against State Motors based on its purchase, on February 28, 1964, of "six new 1964 Comet '404' four door sedan automobiles." The first count of the declaration alleges that State Motors negligently made representations to American Cab that these cars were fit and useable as taxi cabs, which in fact, were false and untrue, in that the clutches, transmissions, and other components of these cars were unfit, improper and required repair. The second count alleges that State Motors made certain warranties about these automobiles which were breached. As a result American Cab seeks damages for repair and replacement costs, loss of time, loss of business, injury to business reputation, inconvenience and other losses.

During the period in question, Aetna had issued to State Motors two consecutive "Garage Liability Policy" each of which was identical in all respects material to this case. The only risk covered thereunder with which we are concerned is the following:

"Part I . . . Coverage B — Property Damage Liability. The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage . . . caused by accident arising out of the *garage operations hazard* for which insurance is afforded as indicated in the declarations; and the company shall have the right and duty to defend any suit against the insured seeking damages payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent" ( emphasis supplied. ) "Garage Operations Hazard [covers] the ownership, maintenance or use of the premises for the purposes of a garage, and all operations necessary or incidental thereto, hereinafter' called 'garage operations.'"

The policy contains the following definitions: "'garage' means an automobile sales agency, repair shop . . . "; "'property damage' means physical injury to or destruction of tangible property"; "'damages' includes . . . damages for loss of use of property."

Exclusions of risks to which the policy does not apply include the following: "( a ) to liability assumed by the insured under any contract or agreement, except . . . a warranty of goods or products; " "( i ) to property damage to any goods, products or containers thereof manufactured, sold, handled or distributed by the named insured if such property damage results from a condition existing therein at the time possession of such goods, products or containers is relinquished to the purchaser thereof. "

State Motors properly conceded in its brief that because of exclusion ( i ) the Aetna policy does not cover it for its own repair or replacement costs to these automobiles. *S. L. Rowland Const. Co.* v. *St. Paul Fire & Mar. Ins. Co.,* 434 P. 2d 725 ( Wash. 1967 ); *Hauenstein* v. *Saint-Paul-Mercury Indem. Co.,* 242 Minn. 354, 356; *St. Paul Fire & Marine Ins. Co.* v. *Northern Grain Co.,* 365 F. 2d 361, 368 ( 8th Cir. 1966 ); *Bowman Steel Corp.* v. *Lumbermens Mutual Casualty Co.,* 364 F. 2d 246 ( 3d Cir. 1966 ); *Bundy Tubing Company* v. *Royal Indemnity Company,* 298 F. 2d 151, 153 ( 6th Cir. 1962 ).

State Motors maintains, however, that it is nevertheless covered for damages to others, such as American Cab, which result from property damage to these cars. In order to facilitate consideration of this contention it would be useful to restate the material terms of Aetna's policy and the claims made by American Cab against which the policy must be measured. *Lumbermen's &c. Co.* v. *McCarthy,* 90 N. H. 320, 321; *Ohio Cas. Ins. Co.* v. *Flanagin,* 44 N. J. 504.

Aetna agrees to pay on behalf of State Motors all sums which State Motors shall become obligated to pay as damages ( including damages for loss of use) because of property damage ( which means physical injury to or destruction of tangible property ) caused by accident arising out of State Motors' garage operations, that is the ownership, maintenance or use of its premises for the purposes of a garage ( sales agency and repair shop ) and all operations necessary or incidental thereto which includes liability under a warranty of goods or products ( exclusion ( a )), but not property damage caused by a condition in such goods or products at the time possession is relinquished to the purchaser thereof ( exclusion i ).

American Cab claims damages against the insured, State Motors, for repair and replacement costs, loss of time, loss of

business, injury to business reputation, inconvenience and other losses resulting from a breach of warranty and negligent misrepresentation by State Motors which, because of the unfitness of the cars sold for use as taxicabs, resulted in clutch and transmission breakdowns which required these cars to be repaired and adjusted, parts and other material to be supplied and replaced in order to make these cars in fit working condition.

Leaving aside for the present the issue of whether the property damage claimed was caused by accident, recovery has been allowed in many instances under similar policies for physical damage to tangible property, other than the product itself, caused by a defect in the product bought from the insured. When house siding manufactured by the insured proved defective, recovery was allowed for the diminution in market value caused to a building by such defective siding applied to it. *Bowman Steel Corp.* v. *Lumbermens Mutual Casualty Co.,* 364 F. 2d 246 (3d Cir. 1966). Recovery was permitted for the damage caused to venetian blinds to which the manufacturer's defective paint had been applied by the purchaser. *Pittsburg Plate Glass Co.* v. *Fidelity & Cas. Co.,* 281 F. 2d 538 (3d Cir. 1960). Where defective tubing manufactured by the insured was used by purchasers as part of radiant heating systems which they installed in homes, liability was admitted for damages to household furnishings caused by water leaks in the heating system. *Bundy Tubing Company* v. *Royal Indemnity Company,* 298 F. 2d 151 (6th Cir. 1962). The insurer, of a manufacturer of aluminum doors, was held not liable for the expense of handling defective doors and their replacements, or for loss of profits and good will sustained by the purchaser, but was held liable for damage to houses in which they were placed. *Geddes & Smith, Inc.* v. *Saint-Paul-Mercury Indem. Co.,* 51 Cal. 2d 558. Recovery was also allowed against the insurer of a distributor of plaster for diminution in the market value of buildings caused by the use of this defective plaster by the purchaser or his contractor. *Hauenstein* v. *Saint-Paul-Mercury Indem. Co.,* 242 Minn. 354. Where the market value of a building was diminished as a result of the use of discolored and faded exterior blocks recovery was also permitted therefor. *Dakota Block Company* v. *Western Casualty & Surety Company,* 132 N. W. 2d 826 (D. S. D. 1965).

The above cases clearly establish that recovery may be had for property damage, including diminution in market value, which may result to tangible property other than the property purchased from the insured as a result of contact with such goods or products purchased from the insured which may be defective or unfit. They confirm the validity of an illustration in defendant's brief that if State Motors had sold a car to a traveling salesman who carried his cloth goods samples therein and because of a defective clutch in the car when purchased hot oil was spewed on the samples, the salesman could recover for the damages to his samples.

However, by the terms of the Aetna policy in this case damages for loss of use as well as related damages claimed by American Cab must be because of physical injury to or destruction of tangible property other than property damage to any goods or products sold by State Motors to a purchaser which results from a condition therein existing at the time the purchaser took possession of the goods. Unless such non-excluded physical injury or destruction of tangible property occurs no damages such as for loss of use are covered by or recoverable under the terms of the policy. *Geddes & Smith, Inc.* v. *Saint-Paul-Mercury Indem. Co.,* 51 Cal. 2d 558; *Aetna Ins. Co.* v. *Harvey W. Hottel, Inc.,* 289 F. 2d 457 ( D.C. Cir. 1961 ); 29A Am. Jur., Insurance, s. 1360, *pp.* 475, 476; Ins. L. J. ( 1954 ) 668, 669. The Trial Court found and ruled that " No property damage within the meaning of the policy is alleged except defects in certain automobiles sold by the insured and such damage is excluded from the policy by Exclusion ( i ). " We hold this finding and ruling proper.

State Motors argues alternatively that even if it could be found that this policy does not clearly cover the alleged claims, a reasonable person in the position of the insured would be so confused and misled by the policy that if he understood it at all, he would believe he was covered.

It is true that the opinion has been expressed, here and elsewhere, that a garage liability policy " is one of the most complex, and perhaps least understood, liability forms in use today. Its complexity is largely attributable to the breadth of coverage. " *Peerless Ins. Co.* v. *Gould,* 103 N. H. 134, 137; *Morrison* v. *Anchor Casualty Co.,* 53 Wash. 2d 707, 708, 709. However although it may be difficult for an untrained layman

to understand the nature of coverages written, that, in itself, does not warrant distorting the risk undertaken by the insurer. 7A Appleman, Insurance Law and Practice, *s.* 4508. "If companies are to continue solvent and capable of serving an important public interest, they must carefully protect themselves against risks which they have not covered and for which no premiums have been paid to them." *Peerless Insurance Co.* v. *Clough,* 105 N. H. 76, 79.

In a situation like the present the rule in this state has long been that the policy should be considered as a whole in the light of all the circumstances and interpreted as a reasonable person in the position of the insured would understand it. *Hoyt* v. *Insurance Company,* 92 N. H. 242, 243; *Lalos* v. *Tickler,* 103 N. H. 292, 295. However in so doing it is fair to interpret the policy in the light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured.

It seems to us that a policy entitled "Garage Liability Policy" which provides liability coverage for physical injury to or destruction of tangible property, but not to products sold caused by a condition therein at time of delivery, caused by accident which arises out of the ownership, maintenance or use of the premises for the purposes of a garage and all operations necessary or incidental thereto, which does not exclude liability under a warranty, would not, and should not, convey to an ordinarily intelligent insured who purchased such a policy that the liability carrier is insuring for losses which a customer might suffer if the product sold failed to live up to the claims made for it by a salesman of the insured, or to stand up under the use which the purchaser indicated it would and did make of it. See *McCaffrey* v. *St. Paul Fire Ins. Co.,* 108 N. H. 373, 375.

In view of the result reached it is unnecessary to consider the propriety of the Trial Court's finding and ruling that "none of the damage alleged in the declaration in the original action is 'caused by accident' within the meaning of the policy."

*Exceptions overruled.*

GRIFFITH, J., did not sit; the others concurred.