Coos
No. 6270

Sun Insurance Company of New York

v.

Blanche C. Hamanne & a.

June 29, 1973

*Gormley & Calamari (Mr. John E. Gormley* orally) for the plaintiff.

*Hinkley & Donovan (Mr. Walter D. Hinkley* orally) for the defendants Jennie Parent and Anna Sanschagrin.

*Pierre J. Morin* for defendants Blanche C. Hamanne and George Hammane, filed no brief.

Griffith, J. This is a petition for declaratory judgment brought by the Sun Insurance Company of New York to determine coverage under a policy issued by it providing "Owners', Landlords' and Tenants' Liability Insurance" to defendant Blanche C. Hamanne. All questions of law raised by the pleadings and an agreed statement of facts were reserved and transferred by *King,* J.

Blanche C. Hamanne for several years prior to February 12, 1969, owned and operated the Gosselin Paint Store in Berlin. The store sold paint, oils, wallpapers and related products. For a number of years the store had owned a gas-powered machine for removing wallpaper by means of steam. This machine was rented to customers and on February 12, 1969, was rented to Richard Parent, the son of defendant Jennie Parent, for use in removing wallpaper at Jennie Parent's house in Berlin. The machine was used on February 12, 1969, in the Parent house and a fire occurred resulting in damage to the house and personal property of Jennie Parent and damage to certain personal property of Anna Sanschagrin, a tenant of Jennie Parent. Suits have been brought against defendant Hamanne by Parent and Sanschagrin for the fire damage based upon a claim that the fire was caused by the defective condition of the wallpaper machine and that its defective condition was due to the negligence of the defendant Hamanne.

Sun Insurance agrees that its policy was in effect on February 12, 1969, but denies that it is required by the terms of the policy to defend the suits brought by Parent and Sanschagrin. The sole issue in the case is whether the policy by its terms provides liability coverage for the rental use of the wallpaper-removing machine.

The insurance policy in question is in a form called "General Liability-Automobile Policy". This is a standard form referred to as a jacket, including general definitions, conditions, and other provisions generally found in liability policies. "The Jacket is then assembled with standard inserts called Coverage Parts to form a complete policy. These inserts provide the specific insurance coverage desired by the insured such as Comprehensive General Liability, Manufacturers' and Contractors' Liability and Owners', Landlords', and Tenants' Liability." Henderson, *Insurance Protection for Products Liability and Completed Operations – What Every Lawyer Should Know,* 50 Neb. L. Rev. 415, 418 (1971) [hereinafter cited as Henderson].

The inserts in the jacket here provide Owners', Landlords' and Tenants' Liability insurance for premises of Blanche Hamanne including "Stores — Paints — Rated as Hardware

Store — Retail". The insurance agreement insert provides coverage for damages the insured may become legally obligated to pay for bodily injury or property damage "caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto . . . ."

Sun Insurance denies that the insurance agreement requires them to defend the suits arising out of the use of the rental machine. They argue that since the insured did not purchase "completed operations" or "products hazard" coverage, they are not required to defend in an occurrence resulting from use of a rented machine away from the Hamanne store. It is clear that the insured here did not purchase either "completed operations" or "products hazard" coverage and that if coverage for the accident with the rented machine were sought within either of these provisions there would be no coverage.

It is well settled that the interpretation of an insurance policy is for this court and that the test in this jurisdiction is what a reasonable person in the position of the insured would understand the policy to mean. *McCaffery v. St. Paul Fire Ins. Co.,* 108 N.H. 373, 236 A.2d 490 (1967); *Aetna Ins. Co. v. State Motors,* 109 N.H. 120, 244 A.2d 64 (1968). In any event the policy is to be read "in the light of what more than a casual reading of the policy would reveal to an ordinary intelligent insured." *Id.* at 125, 244 A.2d at 67.

Both *Lumbermens Mutual Casualty Company v. Pattee,* 108 N.H. 298, 234 A.2d 537 (1967), and *Peerless Insurance Company v. Clough,* 105 N.H. 76, 193 A.2d 444 (1963), dealt with a completed operation exclusion joined with product hazard in a single provision. However, in 1966, these provisions were revised and the standard policy now contains the completed operations clause and the products hazard clause as separate and distinct coverages. Henderson, *supra* at 425. Since the rental of the machine contemplated its return and no performance of operations by or on behalf of the named insured, it was neither an operation nor completed within the definition of "completed operations hazard" appearing on the jacket of the policy here.

The products hazard definitions on the jacket read as follows:

"'Products hazard' includes bodily injury and property damage arising out of the named insured's products or reliance upon or representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from the premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.

"'Named insured's products' means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name including any container thereof (other than a vehicle), but *named insured's products shall not include* a vending machine or *any property* other than such container, *rented to,* or located for use of others but not sold." (Emphasis added.)

Sun Insurance argues that the word "handled" as used in this definition includes rented products but this extended interpretation of the word has been rejected and we think correctly so. *Smedley Co. v. Employers Mut. Liab. Ins. Co.,* 143 Conn. 510, 123 A.2d 755 (1956); *Liberty Mut. Ins. Co. v. Hercules Powder Co.,* 224 F.2d 293 (3d Cir. 1955). In any event the language of the definition specifically excludes rented products.

"The 1966 revised standard policies carry forward this exception [rented equipment] by using the language *'named insured's products* shall not include a vending machine or any property . . . rented to or located for use of others but not sold.' Thus, even though the courts have held that persons engaged in the equipment rental or leasing business are subject to products liability actions, the products hazard coverage is not what such a person should purchase for protection. He would be protected under a premises and operations provision and this is what he should buy." Henderson, *supra* at 432.

The insurance agreement here carries the title "Coverage For Designated Premises And Related Operations In Progress Other Than Structural Alterations, New Construction And Demolition." The agreement insures against liability for occurrences "arising out of the ownership, maintenance or

use of the insured premises and all operations necessary or incidental thereto . . . ." A hardware store dealing in paint and wallpaper would commonly rent equipment for the removal of wallpaper and a reasonable person in the position of the insured would assume such rental is incidental to the operation of the store. The only policy coverage available was provided by the insurance purchased here. *See Insurance Co. of North America v. Electronic Purification Co.*, 67 Cal. 2d 679, 433 P.2d 174, 63 Cal. Rptr. 382 (1967); *Aetna Ins. Co. v. Loxahatchee Marina, Inc.*, 236 So. 2d 12 (Fla. Ct. App. 1970).

The Sun Insurance Company is required by the terms of its policy to provide liability coverage for the accident of February 12, 1969, involving the rental wallpaper machine.

*Remanded.*

All concurred.