Hillsborough
No. 7445

ARTHUR C. ATWOOD

v.

HARTFORD ACCIDENT & INDEMNITY CO., & a.

October 29, 1976

*Wiggin & Nourie* and *Gordon A. Rehnborg, Jr. (Mr. Rehnborg* orally) for the plaintiff.

*Sheehan, Phinney, Bass & Green* and *E. Tupper Kinder* and *Joseph F. Devan (Mr. Devan* orally) for the defendant Hartford Accident & Indemnity Co.

KENISON, C.J.  Action by an insured against his insurer for a declaratory judgment that the insurer is obliged to defend the insured and to pay any damages assessed against him in two pending actions. After a trial, *Flynn,* J., ruled in favor of the insured and reserved and transferred the insurer's exceptions.

The plaintiff insured is a self-employed electrician. He wires outlets and fixtures and occasionally repairs electric appliances but his trade is primarily the performance of a service rather than the sale of merchandise. On November 6, 1972, the janitor of an apartment house called the plaintiff to repair a thermostat in one apartment. The next day the plaintiff learned that a child had died in the apartment from heat prostration. The plaintiff immediately notified his insurance agent of the potential claim. Subsequently, the administrator of the child's estate brought suit against the plaintiff and against a third party who has sought indemnity from the plaintiff.

The defendant Hartford Accident & Indemnity Co. argues that the actions pending against the plaintiff arise from completed operations, which are excluded from the coverage of the policy. The completed operations exclusion in this policy is a standard provision which has produced considerable litigation in New Hampshire and elsewhere. *Whitten Oil, Inc. v. Fireman's Fund Ins. Co.,* 112 N.H. 257, 293 A.2d 757 (1972); *Sun Ins. Co. v. Hamanne,* 113 N.H. 319, 306 A.2d 786 (1973); Annot., 58 A.L.R.3d 12 (1974). The question in this case is whether an ordinary person in the shoes of the plaintiff would understand that the policy did not cover claims such as those now pressed against him. *Berkshire Mut. Ins. Co. v. LaChance,* 115 N.H. 487, 343 A.2d 642 (1975). The objectively reasonable expectations of the insured will be honored even though painstaking study of the policy provisions would have negated those expectations. *Magulas v. Travelers Ins. Co.,* 114 N.H. 704, 327 A.2d 608 (1974); R. Keeton, Insurance Law § 6.3 (1971).

The trial court found: "A reasonable person in the position of the plaintiff would have believed that he was covered by the policy for any claims against him for negligence in his work as an electrician .... There is little in the language and arrangement of this policy which would lead the ordinary person to believe that he had no coverage for injury or property damage which arose after he completed a job." An examination of the policy confirms these findings.

The policy consists of a "Declarations-Coverage Part" and a jacket comprised of definitions and conditions. The front page of the declarations-coverage part contains four indications of the coverage of the policy. The top of the page has blanks to be filled in with the name of the insured, the period of the policy, etc.

Then, under the heading "Summary of Advance Premiums," appear the printed words "Manufacturers' and Contractors' Liability Insurance" followed by the typewritten amount of the premium. The heading for the bottom half of the page is "Manufacturers' and Contractors' Liability Insurance Coverage Part and Schedule." Under the heading "Coverages" are two categories: "A-Bodily Injury Liability" and "B-Property Damage Liability." The plaintiff secured both coverages, and the amount of the premium and the limits of liability in dollars are typewritten in the space provided for each coverage. The final section of the page contains the rating classification, premium base, rates and premium. The rating classification is typed in as follows: "ELECTRICAL WIRING WITHIN BUILDINGS INCLUDING INSTALLATION OR REPAIR OF FIXTURES OR APPLIANCES[.] INSTALLATION OF ELECTRICAL MACHINERY OR AUXILIARY APPARATUS TO BE SEPARATELY RATED[.]" A reasonable person reading this page could only conclude that the policy covers the claims being asserted against the plaintiff.

On the back of this page, at the top, is the heading "Manufacturers' and Contractors' Liability Insurance Coverage Part." Below this is a smaller heading of critical significance, which is considered in the next paragraph. The balance of the page is divided into two columns. At the top of the left-hand column is the heading:

Coverage A — Bodily Injury Liability

Coverage B — Property Damage Liability

The first sentence of text, one hundred twenty-nine words in length, begins: "The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of [bodily injury or property damage] to which this insurance applies . . . ." Following this sentence is a list of exclusions.

The critical heading, which is located between two other headings, reads as follows: "Coverage for Premises and for the Named Insured's Operations in Progress." It is possible to look through the document several times before noticing this heading. Yet this is the only affirmative statement of the coverage of the policy. The defendant also relies on an exclusion clause which provides: "This insurance does not apply . . . (m) to *bodily injury* or *property damage* included within the *completed operations hazard* or the *pro-*

*ducts hazard* [.]" The definition of the completed operations hazard is printed elsewhere. This exclusion clause is buried amidst thirteen others, which are either irrelevant to the plaintiff or expected, as for example the exclusion of obligations imposed by workmen's compensation and unemployment compensation laws. Neither the quoted heading nor the quoted exclusion clause constitutes fair notice to the insured that the policy does not cover the risks defined as the completed operations hazard, which the front page would lead him to believe was covered. *Peerless Ins. Co. v. Clough,* 105 N.H. 76, 193 A.2d 444 (1963).

The facts of this case make a holding in favor of the insured even more justifiable than the holding for the plaintiff in *Peerless.* In that case the insured completed his operations months *before* the policy period began. The dissent took the position that "[n]o reasonable man in the position of the insured could expect that a policy covering all his operations from May 10, 1958 to May 10, 1959, would cover his liability for negligent operations which took place prior thereto in June 1956 and September 1957, and had been completed at that time long before the policy became effective." *Id.* at 85-86, 193 A.2d at 451. In contrast, the relevant operations in this case were performed after the effective date of the policy. Atwood's policy was effective from February 1972 to February 1975. Both the work performed and the injury to Stimson occurred in November 1972 when Atwood's policy was in force. His expectation of being insured for the operations completed in November 1972 were far more reasonable than the *Peerless* insured's expectation of being covered for his operations completed prior to the effective date of his policy.

The plaintiff and his insurance agent have known each other for thirty years and have had insurance dealings for nearly twenty years. It could be found that the agent knew the plaintiff's business and that the plaintiff relied on the agent to see that the plaintiff was fully insured. *See* R. Keeton, Insurance Law § 6.4 (1971). Although the agent's testimony was at times conflicting, the trial court could and did make the following finding: "The plaintiff's insurance agent . . . never told the plaintiff that he was not insured once he left the job. It never occurred to [the agent] that the plaintiff was not protected by the policy. He did not believe that the plaintiff had any exposure." If an insurance agent with twenty years of experience thought that Atwood was covered for completed operations, it is unreasonable to expect Atwood, who

had no experience with reading insurance policies, to know that he was not so covered.

*Exceptions overruled.*

Bois, J., did not sit; the others concurred.