Cheshire
No. 7812

CHARLES A. STORMS

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY

June 19, 1978

*Faulkner, Plaut, Hanna, Zimmerman & Fruend*, of Keene (*N. Michael Plaut* orally), for the plaintiff.

*Bell & Falk*, of Keene (*Ernest L. Bell III* orally), for the defendant.

CANN, J. (By special assignment pursuant to RSA 490:3.) This is a petition for declaratory judgment and an equitable proceeding to determine whether the defendant's owners', landlords' and tenants' policy requires the defendant to defend the plaintiff in a pending liability action and satisfy any adverse judgment. The trial court ruled that the defendant's liability policy afforded no coverage after its voluntary cancellation by the plaintiff, that a reasonable person in the position of the insured would not expect the policy to provide coverage after cancellation, and that there was no mutual mistake that would give cause to reinstate the policy. Consequently, the defendant would not be obligated to defend the plaintiff in the pending liability action. The plaintiff's exceptions to these adverse rulings were reserved and transferred by *Bois*, J. We affirm.

On March 23, 1970, the plaintiff and his former wife bought property in North Swanzey, New Hampshire, which included twelve rental cabins. After the closing, the plaintiff contacted Paul Trask, the defendant's agent. Plaintiff informed Mr. Trask that previously he had not owned any real estate and requested Trask's advice on the kind of insurance he should carry. After viewing the premises, Trask procured for the plaintiff certain fire insurance policies and the defendant's policy against bodily injury and property damage liability. While the latter policy was in force, the plaintiff made repairs to the gas heating system in one of the cabins.

In March 1971, the plaintiff received an invoice for the renewal premium. Since he planned to sell the property, he put the bill aside. Later he informed Mr. Trask that the property would be sold and asked how much of a payment would be required to keep the property insured until the sale went through in May. Mr. Trask asked for, and received, a check for $100. After the closing on May 12, the plaintiff delivered to the company a signed release. Mr. Trask did not advise the plaintff that he might need the insurance after the property had been sold. He also did not believe that the plaintiff retained such an insurable interest in the property after sale that the policy could have been continued.

Several months after the property had been transferred to the new owners, two men were asphyxiated in the cabin with the repaired heating system. The administratrices of the estates of the decedents brought wrongful death actions against the plaintiff, alleging

negligence in installing and maintaining the system. The present owners of the property also sued the plaintiff for indemnification. The defendant carrier denied coverage and the obligation to defend these actions. The plaintiff tendered the refunded premium for reinstatement of the defendant's policy, but that tender was declined.

The defendant argues that the reasonable expectations rule of *Atwood v. Hartford Accident & Indemnity Co.*, 116 N.H. 636, 365 A.2d 744 (1976), has no application in this case. This argument overlooks the whole thrust of that rule; it applies to all insurance contracts in this State. As Chief Justice Doe recognized over one hundred years ago, insurance policies are weighted with such a prolixity of complex verbiage that

> they would not be understood by men in general, even if [the policies were] subjected to a careful and laborious study: by men in general, they were sure not to be studied at all. The study of them was rendered particularly unattractive, by a profuse intermixture of discourses on subjects in which the premium payer would have no interest. The compound, if read by him, would, unless he were an extraordinary man, be an inexplicable riddle, a mere flood of darkness and confusion. Some of the most material stipulations were concealed in a mass of rubbish on the back side of the policy and the following page . . . where scarcely any one would think of looking for information so important. . . . As if it were feared that, notwithstanding these discouraging circumstances, some extremely eccentric person might attempt to examine and understand the meaning of the involved and intricate net in which he was to be entangled, it was printed in such small type, and in lines so long and crowded, that the perusal of it was made physically difficult, painful, and injurious.

*DeLancy v. Insurance Co.*, 52 N.H. 581, 787–88 (1873). From this Chief Justice Doe concluded that the art of typography had "[s]eldom . . . been so successfully diverted from the diffusion of knowledge to the suppression of it." In his view such a policy constituted a fraud. *Id.* at 588.

Although insurers have had over one hundred years to hone their policies into forms that would not ferry the unwary reader on a trip through Wonderland, they regrettably have not seen fit to do so. Insurance policies today often fully merit the criticism that Chief Justice Doe levelled at their predecessors. Moreover, as we have

recognized these policies usually are imposed on the consumer on a take-it-or-leave-it basis. *Magulas v. Travelers Ins. Co.*, 114 N.H. 704, 706, 327 A.2d 608, 609 (1974). The pretense that the parties had bargained for the resulting contract of insurance is an absurdity. For these reasons, we have held that "the provisions of a policy should be interpreted as would a reasonable person in the position of the insured." *Id. citing Peerless Ins. Co. v. Clough*, 105 N.H. 76, 78, 84, 193 A.2d 444, 446, 449–50 (1963); *accord, Atwood v. Hartford Accident & Indem. Co.*, 116 N.H. at 637, 365 A.2d at 745–46.

The defendant argues, and we agree, that in this case the policy definition is clear. The insured is protected against "occurrences," which is defined as accidents "which [result] *during the policy period*, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured. . . ." (emphasis added). Our cases hold that insurance policies "are interpreted from the standpoint of the average layman 'in light of what more than casual reading of the policy would reveal to an ordinarily intelligent insured.' " *Brown v. Laconia*, 118 N.H. 376, 386 A.2d 1276 (1978); *citing Aetna Ins. Co. v. Aetna Ins. Co. v. State Motors, Inc.*, 109 N.H. 120, 125, 244 A.2d 64, 67 (1968); *accord, Berkshire Mut. Ins. Co. v. LaChance*, 115 N.H. 487, 488, 343 A.2d 652, 643 (1975).

■ However, our reasonable expectations rule encompasses more than the policy language. *See Magulas v. Travelers Ins. Co.*, 114 N.H. 704, 327 A.2d 608 (1974); *cf. Vigneault v. Travelers Insurance Co.*, 118 N.H. 75, 382 A.2d 910 (1978). The record discloses that the plaintiff never read his policy. If a policy is so constructed that a reasonable man in the position of the insured would not attempt to read it, the insured's reasonable expectations will not be delimited by the policy language, regardless of the clarity of one particular phrase among the Augean stable of print. When such a policy is involved, the insured may rely on the representations of the agent or even solely on his own understanding of the insurance he is purchasing, as long as that reliance is reasonable. Considered would be such matters as the insured's purpose for procuring the policy and any discussions that the insured had with the agent on the meaning of the policy. *LaChance* and *State Motors* do not require a different rule, because in those cases there is no indication that the policies were unreadable. *See Brown v. Laconia*, 118 N.H. 376, 386 A.2d 1276 (1978).

Applying the reasonable expectations rule to the instant policy, we believe that the trial judge was correct in finding that policy coverage had lapsed before the accident. As we have noted, the

policy language itself is clear. The policy jacket contains two-and-a-half pages of print and holds four additional pages upon which an additional three pages of provisions are printed. We cannot rule as a matter of law that such a policy would deter reasonable men in the position of the plaintiff from reading its contents. Although we do not hold that even with such a policy, an insured could not rely reasonably on the representations of the agent, the record would not support a finding that Mr. Trask made any representations that the plaintiff would be covered for acts he committed after the premises were alienated or the coverage had expired. Hence the rule of reasonable expectations, although applicable, does not favor the plaintiff's case.

The plaintiff also argues that the wrongful death suits against him allege acts of continuing and uninterrupted negligence, which would be covered by the policy after its cancellation. A fair construction of the pleadings in the negligence case, however, does not lead to that result. The allegations posit an act of negligence in installing the system, which resulted after a lapse of time in two deaths. That part of the pleadings that alleges the venting was in substantially the same condition as when it was installed is not arguing a continuous negligence, but is necessary because a superseding intervening cause during that time lapse could bar recovery against Storms. Moreover, even if this were an act of continuing negligence, we could not say that the policy provided coverage after its cancellation.

The plaintiff next argues that mutual mistake occurred in the cancellation, and hence the policy should be reformed "so as to rescind the 'cancellation' and reinstate the policy. . . ." We interpret this argument not as asking for reformation of the policy, but for rescission of the cancellation. Because an agreement to rescind an insurance contract is itself a contract, it is subject to rescission for mutual mistake. *See Maltais v. National Grange Mut. Ins. Co.,* 118 N.H. 318, 320, 386 A.2d 1264, 1265 (1978). The mistake must relate to a material matter of past or present fact covered by the contract. Whether that fact is material depends upon the intention of the parties. *Id.* at 320, 386 A.2d at 1265. The plaintiff wanted to cancel the insurance policy because he was selling his property. He might well have mistakenly believed that he had no insurable interest left after the property was alienated. Trask was apparently under the same belief. However, the plaintiff's motivation in cancelling the policy was not because he thought it could no longer be kept in force. He no longer wanted it kept in force; he wanted to cease paying premiums on property he

no longer owned. Thus there was no mistake in the cancellation's reflecting the intent of the parties.

 The plaintiff advances two final arguments: that the defendant should be estopped from denying coverage and that the defendant's position is against public policy. Although the defendant gave a false answer in its original reason for denying coverage, that untruth alone does not give rise to estoppel. *See American Red Ball Transit Co. v. McCarthy*, 114 N.H. 514, 517, 323 A.2d 897, 899 (1974), *cert. denied*, 420 U.S. 930 (1975). The plaintiff's estoppel contention fails to meet at least two criteria, that the representation be made with intent that the defrauded party act on it and that he did act to his prejudice. Finally, since the plaintiff could not reasonably believe that he was covered under the facts of this case, we are not convinced that public policy requires the company to provide coverage beyond the policy language.

*Exceptions overruled.*

LAMPRON and BOIS, JJ., did not sit; FLYNN, J., sat by special assignment pursuant to RSA 490:3; all concurred.