Hillsborough
No. 78-048

COMMERCIAL UNION ASSURANCE COMPANIES

v.

WILLIAM F. GOLLAN & a.

November 15, 1978

*Devine, Millimet, Stahl & Branch,* of Manchester (*Andrew D. Dunn* orally), for the plaintiff.

*Gallagher, Callahan & Gartrell,* of Concord (*Edward E. Shumaker, III* orally), for the defendant Lloyd G. Reynolds, Inc.

DOUGLAS, J. This case presents issues concerning the effect of certain clauses in a liability insurance policy purchased by a contractor corporation. The corporation built a home whose roof collapsed shortly after its owners took possession.

In 1974 William and Gloria Gollan bought a parcel of land in Peterborough, New Hampshire, from Lloyd and Margaret Reynolds and hired Mr. Reynolds' construction firm, Lloyd G. Reynolds, Inc., to build a home on the lot. Shortly after the Gollans moved into their new home, the roof collapsed. The Gollans then sued the builder for cost of repair and incidental damages. The declaration alleged negligence and breach of warranty. Commercial Union Assurance Companies (Commercial Union) insured the builder under a liability policy. Claiming that certain coverage exclusions applied, Commercial petitioned the superior court for a declaratory judgment under RSA 491:22. The parties submitted an agreed statement of facts and *Batchelder,* J., held in favor of the insurer. The builder's exceptions were reserved and transferred to this court. We reverse.

The trial court was correct in finding that the insurer must bear the burden of proving the absence of coverage. RSA 491:22-a (Supp. 1977); *Merchants Mut. Ins. Co. v. Transformer Serv. Inc.,* 112 N.H. 360, 248 A.2d 112 (1972). The question before us is whether the ordinary layman in the position of the insured could reasonably be expected to understand that certain exclusions qualified the policy's grants of coverage. *See Commercial Union Assurance Cos. v. Derry,* 118 N.H. 469, 387 A.2d 1171 (1978); *Brown v. Laconia,* 118 N.H. 376, 386 A.2d 1276 (1978); *Aetna Ins. Co. v. State Motors, Inc.,* 109 N.H. 120, 125, 244 A.2d 64, 67 (1968).

Insurance policies have long been under attack in this jurisdiction for their confusing language. We recently noted that:

> Although insurers have had over one hundred years to hone their policies into forms that would not ferry the

unwary reader on a trip into Wonderland, they regrettably often fully merit the criticism that Chief Justice Doe [deploring the prolixity of complex verbiage in policies, *DeLancey v. Insurance Co.*, 52 N.H. 581 (1873)] levelled at their predecessors. Moreover, as we have recognized these policies usually are imposed on the consumer on a take-or-leave-it basis. . . . The pretense that the parties had bargained for the resulting contract of insurance is an absurdity.

*Storms v. U.S. Fidelity and Guaranty Co.*, 118 N.H. 427, 429, 430, 388 A.2d 578, 580 (1978).

The policy in the present case is entitled "Comprehensive General Liability Insurance" and is seventeen pages long. The top half of the standard-form first page contains blanks in which are typed the insured's name and address and the nature of his business, the amount of premiums, and the extent of coverage. The insured bought coverage for both bodily injury and property damage. The bottom half of the first page lists certain hazards for which coverage may be purchased. From the presence of numbers typed under the heading "advanced premiums," it is apparent that the builder purchased coverage for "Premises-Operations" and "Completed Operations." "Completed Operations Hazard" is explained in the "definitions" section on page four to include "property damage arising out of operations . . . after such operations have been completed. . . . 'Operations' includes materials, parts or equipment. . . ." The second page is almost entirely a blank form duplicate of page one. However, in eleven lines of print running from the bottom of page two to the top of page three, the reader is informed that "[t]he company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (bodily injury or property damage) to which this insurance applies. . . ." Following this affirmative statement of coverage are fifteen pages of exclusions, limitations, definitions, and amendments.

The very first exclusion (exclusion a) states "[t]his insurance does not apply: a) to liability assumed by the *insured* under any contract . . . but this *exclusion* does *not apply* to a . . . warranty that *work* performed by or on behalf of the named insured will be done in a workmanlike manner." (Emphasis added.) This section, coupled with the first page, the affirmative statement of coverage, the title "General Liability Insurance," and the special purchase of "completed

operations hazard" indicates broad protection for the insured both during construction and upon completion of the building.

Commercial Union relied on the following three exclusions in refusing coverage:

This insurance does not apply: . . .

> (*l*) To property damage to premises alienated by the named insured arising out of such premises or any part thereof . . .

> (n) To property damage to the named insured's products arising out of such products or any part of such products.

> . . . .

> (*o*) To property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith. . . .

The trial court correctly ruled that exclusions (*l*) and (n) do not suspend coverage. However, the trial court found that exclusion (*o*) modified the exception found in exclusion (a) for warranties of work performed to deny coverage. We disagree.

Exclusion (*o*) is only one of the multitudinous exclusions contained in this policy. It is printed in small type seventy-eight lines below exclusion (a). The clear meaning of the exception in exclusion (a) is that the policy provides coverage for liability arising from defects in work warranted by the insured to be workmanlike. If Commercial Union intended exclusion (*o*) to modify or negate exclusion (a), the exclusions should have been physically placed so that any reasonable person in the position of the insured would have understood that they be read together. *Brown v. Laconia*, 118 N.H. 376, 386 A.2d 1276 (1978); *Storms v. United States Fidelity and Guaranty Co.*, 118 N.H. 427, 388 A.2d 578 (1978).

 All parts of an insurance agreement are to be given effect whenever reasonably possible. *Rivier College v. St. Paul Fire & Marine Ins.*, 104 N.H. 398, 402, 187 A.2d 799, 803 (1963). But any reconciliation of contradictory clauses must result in a policy which reflects the insured's reasonable expectations. *Brown v. Laconia*, 118 N.H. 376, 386 A.2d 1276 (1978). Commercial Union suggests that the exception in exclusion (a) preserves warranty of quality and workmanship from the specific exclusion of contractual liability.

Commercial Union suggests further that exclusion (*l*), when read with the exception in exclusion (a), provides coverage for damages to the property of third persons resulting from breach of warranty but not for damages to the work product resulting from such a breach. This interpretation is plausible, but we reject it because it hinges on a distinction between the insured's work product and the property of third persons—a distinction not discussed in either clause. This distinction is particularly confusing here where the work product is the property of third persons. Commercial Union would require the unwary insured to understand a distinction that the clauses do not clearly specify. This is unreasonable. An exclusion must explain those distinctions material to suspension of coverage to be operative.

In view of Commercial Union's failure to advance a reasonable interpretation of exclusion (*o*) and the exception to exclusion (a), we find the two clauses irreconcilable, and hold that exclusion (a) controls.

Commercial Union also argues that a holding for the defendant in this case would convert the insurance policy into a performance bond. A performance bond is a guaranty by a surety that "the building will be completed within the contract price without extra cost to the owner . . . [and that] payment will be made by the contractor to subcontractors and to those who furnish labor and materials." *Rivier College*, 104 N.H. at 401, 187 A.2d at 802. Our construction of the policy does not create a performance bond, but simply protects the insured if liability arises from work performed as defined in the exception in exclusion (a).

Finally, Commercial Union argues that *Aetna Insurance Co. v. State Motors*, 109 N.H. 120, 244 A.2d 64 (1968), requires a holding in its favor. We disagree. *Aetna* concerned a "Garage Liability Policy" that covered only damage caused by accidents arising out of garage operations. The insured in the present case purchased a "Comprehensive General Liability Policy." As we have noted, the insured was justified in understanding that the general purpose of the policy was to cover a broad range of circumstances, including those of this case. The facts in *Aetna* indicate that the insured in that case could have reasonably understood that his insurance policy did not cover the damages in question. The *Aetna* case is further distinguishable in that the damage there was to products sold by the insured rather than to work performed.

■ Our holding in this case is limited to situations in which, taking the insurance policy as a whole, a reasonable person could believe that certain occurrences were covered by the insurance policy, notwithstanding that the insurance ` company intended and considered them to be excluded. In order to exclude occurrences from coverage in an insurance policy, the insurer must clearly state the exclusion in conjunction with whatever sections it is intended to modify.

*Exceptions sustained; remanded.*

LAMPRON, C.J. and GRIMES, J., concur.

BROCK, J., dissenting, with whom BOIS, J., joins.

I would affirm the trial court's ruling that this case is controlled by *Aetna Insurance Co. v. State Motors, Inc.*, 109 N.H. 120, 244 A.2d 64 (1968).

I agree that the policy issued by Commercial Union to the defendant building contractor provides some coverage for bodily injury and property damage arising out of a breach of warranty or faulty workmanship. I would derive such coverage as exists from the completed operations endorsement, which expressly covers "bodily injury and property damage arising out of . . . reliance upon a representation or warranty. . . ." Because of the exempting language in exclusion (a), that exclusion has no effect on liability arising from breach of warranty and need not concern us.

The only issue before us is whether the coverage granted in the completed operations endorsement is limited by other exclusions in the policy, in particular exclusion *(o)*. The various exclusions, which apply to the completed operations endorsement as well as to the basic policy, specify that the insurer did not promise to reimburse the contractor for each and every item of liability which it may incur. The policy does not, for example, cover damage to property over which the insured is exercising control; if the roof had collapsed before the Gollans took possession of their house, Lloyd G. Reynolds, Inc. could not recover from Commercial Union the cost of rebuilding. In a similar manner exclusion *(o)* specifically excludes from coverage "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, . . ." The trial court found, I believe correctly, that this language has the same effect as that brought before this court in the *Aetna* case, which excluded reimbursing the insured garage for the costs of

repairing or replacing its own damaged automobiles. Since the policy language is reasonably clear I am not inclined to disregard it at the behest of an insured who wishes in retrospect that he had purchased broader coverage. *Storms v. U.S. Fidelity & Guaranty Co.*, 118 N.H. 427, 388 A.2d 578 (1978). I would here affirm the trial court's conclusion that Lloyd G. Reynolds, Inc., cannot recover under the policy any costs it may incur for repair or replacement of the Gollans' roof.

This interpretation would not render the completed operations endorsement meaningless. *See Rivier College v. St. Paul Fire & Marine Ins.*, 104 N.H. 398, 187 A.2d 799 (1963). Commercial Union does not dispute that the policy affords coverage for damage to the Gollans' personal property which was in the house at the time of the collapse, as well as for any bodily injury which might have occurred. The exclusion does not therefore "remove from coverage the very hazard for which a specific charge was made." *Brown v. City of Laconia*, 118 N.H. 376, 386 A.2d 1276, 1277 (1978). The fact that in this particular case the elements of damage allowable under the policy do not approach the policy limits should not influence us to rewrite the policy terms.