Strafford
No. 78-255

THE HANOVER INSURANCE COMPANY

v.

ERNEST M. GRONDIN, JR. *& a.*

May 23, 1979

*Sulloway, Hollis, Godfrey & Soden*, of Concord (*Stephen M. Duprey* orally), for the plaintiff.

*Cooper, Hall & Walker*, of Rochester (*Peter A. Handy* orally), for the defendants Ernest M. Grondin, Jr., and Norma M. Grondin.

*Burns, Bryant, Hinchey, Cox & Shea*, of Dover (*Paul R. Cox* orally), for the defendant Priscilla D. Boyle, Administratrix, Estate of Martin P. Boyle.

BOIS, J.   This is a petition for declaratory judgment, RSA 491:22, to determine coverage under a homeowner's liability insurance policy. An agreed statement of facts was submitted to *Mullavey*, J., who determined that "all of the claims arise . . . from the ownership, operation and use of a watercraft owned by the insured, away from the premises and with inboard motor power exceeding fifty horsepower." The court ruled that the accident came within an exclusion of the policy and "that the plaintiff company need not defend nor respond in damages . . . ." All questions of law raised by defendants' exceptions were reserved and transferred. We overrule defendants' exceptions.

On July 24, 1975, Martin P. Boyle was fatally injured while swimming when he was struck by a motor boat owned by the defendants Grondin. With his parents' permission, fourteen-year-old David Grondin was operating the sixteen-foot craft, which was powered by a 210-horsepower inboard motor. The administratrix of Boyle's estate brought suit against the Grondins. Count I of the writ alleges the negligent operation of the boat by the defendants through the negligence of their agents and servants. Count II alleges negligence in the

defendants' failure to supervise properly their minor son and entrusting him with a dangerous instrumentality. Count III alleges unseaworthiness of the boat due to lack of care in the operation of the boat. Defendants concede tha no coverage is afforded by counts I and III of the writ. They restrict their present claim to the negligent entrustment theory.

At the time of the accident, the defendants were covered by a homeowner's insurance policy issued by the plaintiff company. Section II of the policy provided in pertinent part as follows:

> 1. *Coverage F—Liability:* To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the Company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient.

The DEFINITIONS under Section II provide in pertinent part as follows:

> 1. *Definition of Insured*: The unqualified word "Insured" includes (a) the Named Insured, (b) if residents of his household, his spouse, the relatives of either and any other person under the age of 21 in the care of an Insured, (c) except with respect to Coverage for Physical Damage to Property, any person or organization legally responsible for animals and watercraft owned by an Insured, except a person using or having custody or possession of any such animal or watercraft without the permission of the owner. . . .

The EXCLUSIONS under Section II provide in pertinent part as follows:

> *Section II of this Policy Does Not Apply:*
>
> * * *
>
> (b) under Coverages F and G, to the ownership, maintenance, operation, use, loading or unloading of . . . (2) watercraft owned by or rented to an Insured, while away from the premises, if with inboard motor power exceeding fifty horsepower . . . .

*Coverage*

██ Defendants' first argument is that the language of the policy is "vague and confusing" in that the policy and the exclusion clause did not give fair notice of noncoverage.

> [T]he rule in this state has long been that the policy should be considered as a whole in the light of all the circumstances and interpreted as a reasonable person in the position of the insured would understand it. However in so doing it is fair to interpret the policy in the light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured.

*Aetna Ins. Co. v. State Motors, Inc.*, 109 N.H. 120, 125, 244 A.2d 64, 67 (1968) (citations omitted); *accord, Storms v. United States Fidelity and Guar. Co.*, 118 N.H. 427, 430, 388 A.2d 578, 579–80 (1978); *Atwood v. Hartford Accident & Indem. Co.*, 116 N.H. 636, 637, 365 A.2d 744, 746 (1976); *Berkshire Mut. Ins. Co. v. LaChance*, 115 N.H. 487, 488, 343 A.2d 642, 643 (1975). In applying the "reasonable expectation rule," we have held that "it is well settled that the interpretation of an insurance policy is for the court," *Sun Ins. Co. v. Hamanne*, 113 N.H. 319, 321, 306 A.2d 786, 788 (1973), and that "the court will honor the reasonable expectations of the policy holder." *Magulas v. Travelers Ins. Co.*, 114 N.H. 704, 706, 327 A.2d 608, 609 (1974).

██ An examination of the policy reveals that the provisions of section II relating to insuring agreements and exclusions are both brief and located in close proximity to each other. The captions are simple and informative. The language is clear and unambiguous. This is in sharp contrast to the seventeen page policy and multitudinous exclusions dealt with in *Commercial Union Assurance Cos. v. Gollan*, 118 N.H. 744, 394 A.2d 839 (1978), or the sentence of one hundred twenty-nine words found in *Atwood v. Hartford Accident & Indem. Co.*, 116 N.H. 636, 638, 365 A.2d 744, 746 (1976). A fair reading of the policy does not reveal an ambiguous and confusing interplay between the words "the insured", "an insured" and "the named insured" found in *Commercial Union Assurance Cos. v. Town of Derry*, 118 N.H. 469, 387 A.2d 1171 (1978) and *Pawtucket Mutual Insurance Co. v. Lebrecht*, 104 N.H. 465, 190 A.2d 420 (1963).

The record reveals that the trial court applied the proper test in arriving at the finding that "a reasonable person in the position of the insured reading the policy as a whole would come to the conclusion that no coverage would be afforded for personal injuries resulting from the operation of the boat under the conditions alleged." We agree with the trial court that the language of the policy is clear.

The defendants next argue that the company is bound by the allegedly confused reason that it initially gave them for the denial of coverage. That reason had been based on operation and ownership requirements of the policy. We interpret this claim to be one of estoppel. The record contains no evidence of the elements required to sustain the application of this theory. "Although the defendant gave a false answer in its original reason for denying coverage, that untruth alone does not give rise to estoppel." *Storms v. United States Fidelity and Guar. Co.*, 118 N.H. 427, 432, 388 A.2d 578, 581 (1978).

*Negligent Entrustment*

█  Defendants' final argument is that their claim is based upon the negligent entrustment of a dangerous instrumentality, and on the parents failure to train, instruct, and supervise a minor son. They submit that these allegations are "based on primary negligence separate and distinct from the watercraft and are not encompassed within exclusion (b) (2)." They rely on cases from four other jurisdictions to support their position. Kansas: *see Upland Mut. Ins., Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974); Minnesota: *see Republic Vanguard Ins. Co. v. Buehl*, 295 Minn. 327, 204 N.W.2d 426 (1973); New Jersey: *see McDonald v. Home Ins. Co.*, 97 N.J. Super. 501, 235 A.2d 480, (1967); New York: *see Travelers Ins. Co. v. Beschel*, 71 Misc. 2d 420, 336 N.Y.S.2d 370 (1972), *modified*, 43 App. Div. 2d 734, 350 N.Y.S.2d 682 (1973); *Lalomia v. Bankers & Shippers Ins. Co.*, 35 App. Div. 2d 114, 312 N.Y.S.2d 1018 (1970), *aff'd*, 31 N.Y.2d 830, 339 N.Y.S.2d 680 (1972).

A reading of these cases, except for *Lalomia*, however, reveals that liability is predicated on the entrustment to an individual known, or who should have been known, to have been unfit because of age, bad habits, dangerous propensities, carelessness, recklessness, or habitual driving while under the influence of liquor. This distinction was recognized by the Minnesota Court in a suit involving identical exclusionary language. That suit also involved watercraft and facts strikingly similar to those before us here. The Minnesota Court held that "[g]eneral allegations of negligence are insufficient to maintain a cause of action within *Republic Vanguard Ins. Co. v. Buehl, supra.*" *Torbert v. Anderson*, 301 Minn. 339, 344–45, 222 N.W.2d 341, 345 (1974).

The negligent entrustment theory of action expressed in Count II by the defendants Grondin and Boyle is as follows:

(2)  That the defendants, husband and wife, on or about 24 July 1975, owned and controlled a 16 foot Correct Craft

Mustang 210 hp inboard speedboat which on said date was being used with the defendants' knowledge and consent by their minor child, David W. Grondin, who was operating said speedboat on the Depot Pond, a navigable waterway, located in Milton, New Hampshire, and that in the course of said operation the said David W. Grondin struck, injured and killed the plaintiff's decedent who was then and there swimming in said pond, in the exercise of due care.

(3) That at said time and place it was the duty of the defendants to properly supervise their said minor child, David W. Grondin, and to use due care in respect to the entrustment of said speedboat to others in view of its dangerous propensities, but nevertheless, the defendants, wholly regardless of their said duties, failed to adequately and competently train, instruct and supervise the operator of said speedboat and were otherwise negligent in allowing their said minor child to use said dangerous instrumentality at said time and place unattended by any adult supervision.

These pleadings are merely "general allegations" of negligence and would not support a cause of action in Minnesota or, we believe, in the other three jurisdictions relied on by the defendants. In any event, we adopt the rationale of the courts that have held that "[t]he accident occurred off the premises and undoubtedly from the use of the [instrumentality]. [The] argument that the 'negligent entrustment', rather than the 'use' of the [instrumentality] is the negligent act ignores the clear language of the exclusionary clause." *Aetna Cas. & Sur. Co. v. Am. Mfrs. Mut. Ins. Co.*, 261 Ark. 326, 327–28, 547 S.W.2d 757, 758 (1977).

The Alabama Supreme Court denied coverage in a case involving interpretation of an exclusionary clause similar to the one before us. *Cooter v. State Farm Fire & Cas. Co.*, 344 So. 2d 496 (Ala. 1977).

The clear and unambiguous language here applicable is susceptible of but one meaning; that this homeowner's policy excludes personal liability coverage for bodily injury arising out of the ownership and use of [the designated instrumentality] owned or operated by the insured. It is the very condition spelled out in this exclusion from coverage that must be proved in fixing liability against the insured under the negligent entrustment doctrine. Once the essential elements of the tort claim for negligent entrustment of a

motor vehicle are proved, the policy exclusion is likewise legally operative so as to effectively bar liability of the insurer.

Id. at 499 (citation omitted).

Massachusetts echoed this reasoning in *Barnstable County Mut. Fire Ins. Co. v. Lally*, 373 N.E.2d 966 (Mass. 1978).

[W]e note that because the terms of the exclusionary clause are plain and free from ambiguity . . . we do not . . . construe them strictly against the insurer. Rather, we must construe the words . . . in their usual and ordinary sense. In so doing, we conclude that the terms of the policy . . . necessarily apply to a situation in which bodily injury is alleged to have been caused by the negligent entrustment of a dangerous instrumentality to a minor. . . .

"[N]egligent entrustment" as a distinct and specific cause of action is not exclusive of, but, rather, is derived from the more general concepts of ownership, operation and use of a motor vehicle. Therefore, it would be illogical to conclude that the exclusionary clause pertaining generally to the "ownership . . . operation or use . . . of" a recreational motor vehicle does not apply specifically to the negligent entrustment of the vehicle to a minor.

Id. at 969.

We endorse the rationale of the above cited cases and hold that the trial court correctly ruled that the homeowner's policy did not afford coverage to the Grondins for any liability arising out of their son's use of the watercraft.

*Exceptions overruled.*

GRIMES, J., did not sit; the others concurred.