Rockingham
No. 80-309
No. 80-310

JULIEN MOORE, R–W ASSOCIATES, INC. *& a.*

v.

NEW HAMPSHIRE INSURANCE COMPANY,
AETNA CASUALTY & SURETY COMPANY *& a.*

April 7, 1982

*Calderwood, Ouellette, Hallisey & Dibble P.A.,* of Dover (*Stephen J. Dibble* on the brief and orally), for the plaintiff R–W Associates, Inc.

*Fisher, Parsons & Moran,* of Dover (*Edward T. Clancy* on the brief and orally), for the defendant New Hampshire Insurance Company.

KING, ·C.J.   The plaintiffs appeal from a decree of the Superior Court (*Mullavey*, J.) that a garage liability policy issued by New Hampshire Insurance Company to Robert Lambert d/b/a The Stop Shop and Quality Used Cars, Robert Lambert, Wayne Jones, and Julien Moore, A.T.I.M.A. did not cover the plaintiff Julien Moore for any liability arising out of an automobile accident in which he was involved. We reverse.

In July of 1971, Julien Moore, Wayne Jones, and Robert Lambert were members of a partnership known as Stop Shop Sales & Service (Stop Shop) which sold and serviced automobiles. In October of 1971, the partnership contracted with Avis Rent-A-Car to serve as a satellite agency for car rentals.

On February 3, 1971, New Hampshire Insurance Company renewed the above-mentioned garage liability policy effective during the period of March 27, 1971, to March 27, 1973. That policy obligated the insurer to "pay . . . all sums which the insured shall become legally obligated to pay because of . . . bodily injury . . . to which this insurance applies, caused by an occurrence and arising out of garage operations, including only the automobile hazard for which insurance is afforded." The applicable automobile hazard for which insurance was afforded under the policy included "(1) [t]he ownership, maintenance or use . . . of any automobile for the purpose of garage operations, and (2) the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in the charge of the named insured and used principally in garage operations . . . ." Under this provision, "garage" was defined as ". . . an automobile sales agency, repair shop, service station, storage garage, a public parking place," and "[g]arage [o]perations [mean] the ownership, maintenance or use of the premises for the purposes of a garage and all operations necessary or incidental thereto."

On August 26, 1972, Julien Moore and Wayne Jones, together with their dates, set out in an Avis rental car from their agency en route to Ogunquit, Maine, ostensibly for the purpose of assisting an Avis customer having difficulty with his rental car. They were unable to locate the customer. They proceeded to enjoy a dinner and an evening dancing in Ogunquit. Early in the morning of August 27, 1972, they left Ogunquit for their return to Portsmouth. While the plaintiff Moore was driving the car through Kittery, Maine, the automobile struck Laura Donnell, a pedestrian.

Nearly four years later, in the superior court of Maine, Donnell sued Moore and General Rental Company, an affiliate of Avis and owner of the vehicle involved in the accident. General Rental Com-

pany petitioned for removal of the action to the federal court, and the Maine court granted the petition.

Julien Moore then filed a petition for declaratory judgment against Aetna Casualty & Surety Company pursuant to RSA 491:22 to determine coverage for the accident. Moore subsequently added New Hampshire Insurance Company as a defendant and, in a separate action, sued Richardson-Webb, Inc. (now R–W Associates, Inc.), an insurance agency, and its employee, Leon G. Yeaton, for negligently failing to procure insurance to cover the accident. R–W Associates, Inc., would be liable only if New Hampshire Insurance Company prevailed in its claim that the garage policy did not cover the accident. R–W Associates, Inc., and Leon Yeaton then intervened as parties plaintiff in the declaratory judgment action. Pursuant to agreement of counsel, Julien Moore took a voluntary non-suit against Aetna Casualty & Surety Company.

Trial before the court resulted in certain findings and rulings and a decree that the garage liability policy did not provide coverage. The plaintiffs Moore and R–W Associates, Inc., appealed from this ruling. The plaintiff Moore has neither briefed nor argued the appeal.

Because the automobile hazard clause applicable to the policy expressly states that the non-business use of an automobile in the charge of the named insured and used principally in garage operations is covered, it is irrelevant whether the plaintiff Moore was involved in a business activity when the accident occurred, and the only issues in this case are whether the automobile in question was in the charge of the named insured and whether it was used principally in "garage operations." Two of the three partners operating the Stop Shop, a named insured, were in the car when the accident occurred. In fact, one of the partners was driving. Clearly, therefore, the automobile was in the charge of a named insured.

It is undisputed that the car involved in the accident was an Avis rental car and that the Stop Shop used it principally in the use of its rental operations. Rental operations are not listed among the specified definitions of a "garage" in the policy. Consequently, the ultimate issue in this case is whether the Stop Shop's automobile rental operations are "incidental" to the conduct of its "garage" business.

The plaintiff argues that the trial court erred in finding that the garage liability policy did not afford coverage of the accident. Specifically, the plaintiff asserts that RSA 491:22-a (Supp. 1979) imposes the burden of proving non-coverage upon the insurer and that, because the defendant failed to produce any evidence that the

Stop Shop's rental business was not incidental to its garage operations, the defendant failed to meet its burden.

Resolution of conflicts in the evidence is for the trier of fact, and the findings of the trial court are binding on this court if supported by evidence. *Chagnon Lumber Co., Inc. v. DeMulder*, 121 N.H. 173, 175, 427 A.2d 48, 50 (1981); *see Erin Food Servs., Inc. v. 688 Props.*, 119 N.H. 232, 237, 401 A.2d 201, 204 (1979). Accordingly, in reviewing the plaintiff's claim of insufficiency of the evidence, we must consider it in the light most favorable to the defendant. *See Welch v. Fitzgerald-Hicks Dodge, Inc.*, 121 N.H. 358, 361, 430 A.2d 144, 146 (1981); *Foss v. Byrnes Chevrolet, Inc.*, 119 N.H. 808, 809, 408 A.2d 415, 415 (1979). A review of the transcript discloses that the defendant offered no evidence which would support a finding that the Stop Shop's rental activities were not incidental to its garage operations. Accordingly, the defendant has failed to meet its burden under RSA 491:22-a (Supp. 1979). *See Allstate Ins. Co. v. Carr*, 119 N.H. 851, 409 A.2d 782 (1979).

The plaintiff presented evidence that the three partners included the profits from the rental operations in the profits from their other activities and divided the gross total equally among the partners. The evidence indicated that all three of them participated in the conduct of the rental operations although to varying degrees. The evidence showed that a principal reason for the rental business was to enable them to provide customers with transportation while they repaired their customers' cars. The defendant relies on the fact that the insurance policy made no mention of a rental operation, that immediately after the accident the Stop Shop failed to notify the defendant, and that, in explaining this failure, one of the parties at trial stated that "I had no reason to [notify the defendant]." The evidence showed, however, that the Stop Shop did notify Avis, which carried insurance on its vehicles. Moreover, the failure of the policy to mention the rental business is immaterial because the rental of cars is covered if it is incidental to the insured's garage operations. In conclusion, we hold that the defendant has failed to meet its burden of proving that the rental operations were not incidental to the garage operations.

The defendant argues that the trial court properly ruled that the garage liability policy did not afford coverage in this case because leasing automobiles is not an activity incidental to garage operations as a matter of law. We disagree.

In *Sun Ins. Co. v. Hamanne*, 113 N.H. 319, 306 A.2d 786 (1973), we held that an insurance policy extending coverage to the

insured against liability arising out of the use of his premises as a hardware store and " 'all operations necessary or incidental thereto . . . ,' " *id.* at 321, 306 A.2d at 787, afforded protection against liability arising from the rental of a defective wallpaper remover because "[a] hardware store dealing in paint and wallpaper would commonly rent equipment for the removal of wallpaper and a reasonable person in the position of the insured would assume such rental is incidental to the operation of the store." *Id.* at 323, 306 A.2d at 788. It is not uncommon for motor vehicle service stations and automobile repair shops to engage in the rental of trucks and automobiles, and a reasonable person could conclude that such rental activities are incidental to the garage operations. Accordingly, we reject the defendant's assertion that the rental business was not incidental to the garage operations as a matter of law.

*Reversed.*

DOUGLAS and BATCHELDER, JJ., concurred; BROCK and BOIS, JJ., dissented.

BROCK, J., dissenting: Automobile rentals are not an operation covered within the policy definition of "garage operations." I would hold as a matter of law that commercial automobile rental operations, involving the rental of automobiles not owned by the insured, are neither necessary nor incidental to the operation of an auto repair or used automobile sales business and are therefore not covered under the "garage liability" policy issued by the defendant to its insured, The Stop Shop and Quality Used Cars.

BOIS, J., concurs in the dissent.