Hillsborough,  } No. 3279.
Jan. 6, 1942. }

PROTECTIVE CHECK WRITER CO., INC. *v.* THEODORE COLLINS
*Prin. Deft. & Trs.*

28

*Wason, Guertin & Leahy* (*Mr. Guertin* orally), for the plaintiff.

*Sullivan & Dolan* (*Mr. Dolan* orally), for Mrs. Ney, the trustee charged.

*Warren, Wilson, McLaughlin & Wiggin,* for the principal defendant, filed no brief.

ALLEN, C. J. Mrs. Ney's motion to be discharged as a trustee if the co-trustee was not charged was properly denied. The record is singularly inconsistent in its conflicting statements that the hearing was on the chargeability "of the trustees" and only on that of Mrs. Ney. But as she alone was charged, while the evidence at least in respect to the payments of $300 to the principal defendant, demonstrates that both administrators were equally participants in making the payments, it is assumed that the hearing was only

on the chargeability of Mrs. Ney, leaving that of her co-administrator undetermined.

While the law takes the view that co-representatives of a decedent's estate are an entity of one person, making the acts of one with certain equitable exceptions, the acts of the others, yet each is liable for his own acts. The trustee-process is a form of attachment creating a lien on "any money, goods, chattels, rights or credits" of the principal defendant in the trustee's possession, with certain exemptions not here in issue. P. L., c. 356, s. 19. The trustee is chargeable for all of such property in any of its forms as he had in his possession when served with process and as later coming into his possession within the time in which his chargeability may be determined. He is therefore held on a claim unliquidated when he is summoned if the claim becomes liquidated by the time of hearing upon his chargeability. The effect of the administrators' disregard of the trustee-process in paying money to the principal defendant was to impair the lien created by the process. They violated a statutory obligation, and their wrong is more consistently classified as a tort than as a breach of contract. On a joint liability for tort, one or more of the wrongdoers may be sued without suing all. In other words, the liability is several, as well as joint. While the act of one is the act of all, it continues to be the act of one. In respect to wrongful conduct of co-representatives other than for breach of contract, the conception of their union as one legal person is not carried to the extreme that they can be only under joint liability. 11 R. C. L. 409; 21 Am. Jur. 805; 24 C. J. 1189, *et seq*; Schouler, Wills (5th *ed.*) ss. 1402, 1403a.

The cases of *Barker* v. *Garland*, 22 N. H. 103, and *Treadwell* v. *Brown*, 41 N. H. 12, are not in point. In the *Barker* case the court stated by way of *dictum* the rule that when the obligation to the principal defendant is upon a joint contract, all of the joint debtors must be made parties as trustees. The *dictum* doubtfully states the law that they must all be parties if their liability is several as well as joint. In the *Treadwell* case it was held that a co-partner could not be held by trustee-process as a debtor of his co-partner unless the debt is established by a settlement of the partnership affairs. The plaintiff's remedy, as the court stated, is by bill in equity to reach the principal defendant's interest.

The claim of the estate to the property in the possession of one of the heirs was at all times until the compromise agreement, in the control of the administrators, and the fact that they did not gain

possession of the property is immaterial. They settled the claim, and for the amount of the settlement they are accountable. The value of the claim rather than of the property claimed is to be determined. The administrators received and had full charge and control of the claim as an asset of the decedent's estate.

Mrs. Ney's chargeability upon the claim depends upon its liquidated value at the time of the hearing upon her chargeability. It is argued for her, in effect, that either it had no value or its value could not be shown, as to any interest of the estate. This claim rests upon a construction of the compromise agreement by which a surrender of all interest of the estate in the claim was made with no real consideration received by the estate. In contracted statement, as is asserted, the debtor agreed to pay $18,000 in settlement of the estate's claim of $25,000 provided the estate released her and provided the payment was made, not to the administrators, but directly by or through the debtor to the heirs of the decedent according to the statute of distribution.

The agreement, however, is more reasonably to be construed as fixing the estate's claim at $18,000 payable to it, but with the payment detoured by an order of the administrators for payment to the heirs without the actual receipt of the money by the estate. This is the sum and substance of the agreement as determined by examination of its terms in the light of the competent extrinsic evidence. In its operative effect it manifests the settlement of a claim of the estate rather than a gift to third persons. Form yields to substance and realities prevail over skilfully drawn phraseology. Whatever purpose prompted the phraseology it does not control the meaning and effect of the agreement which its terms and provisions in their entirety disclose. It is true that what the parties mean by what they say, is to be ascertained. The test is not what the parties actually intended, but how they have expressed themselves by their language. What the debtor, and also the other parties to the agreement, thought they were doing, is neither material nor competent as evidence. What thought their agreement expressed, is the goal of construction. Verbiage alone is not decisive of expressed meaning when the language used is ambiguous, and a gift by fiduciaries of a claim considered by them to be valuable, to the detriment of persons known to them to be in interest, can be found only when no other construction is permissible. Throughout the agreement is a recognition of a meritorious and valuable claim of the estate to be regarded as an asset of the estate. Its terms for

special treatment of the asset with the apparent purpose of shielding the heirs from the subjection of the payments to them of the claims of creditors, do not destroy it or lessen the value of the estate's interest in it.

In brief statement of some of the points leading to this construction, the claim belonged to the estate, was for a substantial amount of property, was regarded as having great merit, and the estate expended large sums, if not the major part of its remaining assets, in the undertaking to collect it. The heirs had no claim against the debtor, and an inheritance tax was paid the State on the money received by all of them, the debtor as well as the others. The suggestion that the tax was not paid in full or that it was other than an ordinary inheritance tax is without evidence to warrant it. It does not appear that any of the heirs contested the payment. A tax was paid and the evidence permits no conclusion of less than payment in full. A tax of eight and one-half per cent was paid on about $30,000, which amount, as the evidence shows, necessarily included all of the $18,000. The Probate Court's adoption of the agreement expressly reserved the rights of the State to the tax.

Mrs. Ney afterwards filed under oath an account of her administration in the Probate Court. She admitted that she read it over before signing it. It was prepared by her attorney who must have had information relative to the agreement. It includes, as an asset accountable for, the proceeds of the property in the debtor's possession, and as a discharge of liability therefor, the payments made pursuant to the agreement.

In the face of this evidence, it is difficult to read the agreement as contemplating that the compromise was not to establish the value of the claim as an asset of the estate. The suggestion is made that the fact of these entries in the account is unimportant in view of the court's prior approval of the compromise. The answer is that the allowance of the account with the entries throws light upon the construction of the approval, as amounting to a decree of distribution of a special fund chargeable to the administrators. The approval of the agreement and the allowance of the account, admittedly to be considered with reference to each other, are to be held in consistent harmony if they may be.

The fact that the agreement was made long before the expiration of the time for presenting claims against the estate also strengthens the probability that instead of providing for the loss of an asset of

the estate, its purpose was to effect a partial distribution among the heirs in the belief that the other assets of the estate would suffice to meet claims and charges having precedence of the interest of the heirs. The condition of the agreement that it should be effective only upon its approval by the Probate Court also indicates its purpose that it should be for the benefit of the estate.

It seems unnecessary to call attention to other features of the agreement, both in its terms and in the extrinsic competent evidence, in aid of the view taken of its tenor to show the value of the claim against the debtor as an asset of the estate.

The approval of the Probate Court to the agreement, construed as Mrs. Ney contends it should be, is not a judgment against the plaintiff. Having an attachment lien on the share of the defendant as an heir, it was entitled to be made a party to the petition for the approval. By virtue of its lien it stood in the defendant's place, so far as its lien might be affected by any order. The order, so far as it had bearing on its interest, was made with no opportunity for it to be heard. The trustees with full notice of its claim, ignored it, and gave the court no notice of it. While the Probate Court has no jurisdiction to pass upon the validity of claims against legacies and the shares of heirs, the claimants have the right to be heard on questions affecting the legacies and shares. They have an interest, which if adversely affected by a decree gives them the standing of parties "aggrieved" if the decree concludes their interest "and which is not strictly interlocutory." (P. L., c. 311, s. 1.)

While a probate decree is often held to be judgment *in rem*, this is so only as to persons constructively notified by publication of the proceeding in which the judgment is rendered. There was no such notice here.

In another view, the jurisdiction of the Probate Court to approve the agreement is doubtful. It has been repeatedly held that the court has jurisdiction only so far as granted by the legislature; and no power to authorize compromises of claims in favor of an estate is found in the statutes. In fact, the authority to approve compromises of claims against estates (P. L., c. 302, s. 27) has implicative force to deny authority when the estate is the claimant. Whether an administrator has acted properly in compromising a claim of the estate as well as in paying a claim in full, may be passed upon as an incident in the hearing upon his account in settlement of his administration, but for the Probate Court to determine in advance what an administrator may do in respect to compromises of such

claims, a power of judicial management is assumed which has not been granted in any specific terms.

Under this view, a valid judicial approval of the agreement being a requisite of its effective force and not being obtainable, the agreement contained a condition which could not be fulfilled and hence nullified it. But the allowance of Mrs. Ney's account charging herself with the proceeds of the estate's claim is unaffected thereby.

*Trustee charged for full amount of plaintiff's judgment against defendant.*

All concurred.