Strafford,
No. 5088.

PAWTUCKET MUTUAL INSURANCE COMPANY

*v.*

THOMAS B. LEBRECHT & a.

Argued February 5, 1963.

Decided April 30, 1963.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *Dort S. Bigg* (*Mr. Bigg* orally), for the plaintiff Pawtucket Mutual Insurance Company.

*Upton, Sanders & Upton* and *Carleton Eldredge* (*Mr. Eldredge* orally), for the defendants Thomas B. and Marjorie R. Lebrecht.

*Hartnett & Moher* for the defendants Barbara Getchell, p/p/a Horace K. Getchell and Horace K. Getchell, individually.

LAMPRON, J. On May 9, 1959, Roger Lebrecht, the seventeen-year-old son of the policyholders and a resident of their household, is alleged to have committed an assault on Barbara Getchell, also a minor. On February 17, 1960, Horace K. Getchell, Barbara's father, brought an action for her, and another individually, against the policyholders, Thomas and Marjorie. The declarations in these actions allege that the defendants who had custody and control of their minor son "so conducted themselves in the care, custody, control and upbringing of said minor . . . and otherwise that through their negligence and fault and/or wanton, wilful conduct and through their neglect, said Roger Lebrecht, who was a delinquent minor" committed the aggravated assault which is the basis of the actions.

The company takes the position that the assault of Barbara by Roger was an intentional act liability for which is excluded under the terms of the policy and further that the failure of the Lebrechts to give the company timely notice of the assault and battery also bars them from coverage.

As to the company's first contention, the Court ruled "that the actions instituted against the Lebrechts are based on claims of negligent acts and that coverage is not excluded by the terms of the policy."

Section II of the policy reads as follows: "Coverage F — Liability: to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury . . . sustained by any person."

"Insured" is defined as follows: "The unqualified word 'Insured' includes (a) the named Insured, (b) if residents of his household, his spouse, the relatives of either and any other person under the age of 21 in the care of an Insured."

Under exclusions (c) the policy provides there will be no liability coverage for "injury . . . caused intentionally by or at the direction of the Insured."

The company takes the position that the above definition of "Insured" must be interpolated into the provisions of exclusion (c). In other words it contends that where the policy excludes coverage of injuries caused intentionally by "the Insured" this exclusion comprehends injuries intentionally caused by any "Insured."

Thomas and Marjorie Lebrecht, the policyholders, maintain that each "Insured" stands alone with respect to the exclusion. Consequently since they committed no intentional act, the exclusion is inapplicable as to any suit against them even though the perpetrator of the act was their son, an additional "Insured" under the policy. We agree with this interpretation.

The exclusions which apply to the liability coverage of this policy are contained in eight paragraphs lettered (a) through (h). Paragraph (a) excludes any business pursuits of "an Insured." Paragraph (c), involved here, excludes injury caused intentionally by or at the direction of "the Insured." Paragraph (g) excludes coverage for medical payments to "any Insured within the meaning of parts (a) and (b)" of the definition of "Insured" previously set out in this opinion. This definition refers to "the named Insured" in part (a) and to "an Insured" in part (b).

Furthermore paragraph 2 of the policy conditions reads "Severability of Interests — Coverage F: The term 'the Insured' is used severally and not collectively, but the inclusion herein of more than one Insured shall not operate to increase the limits of this Company's liability."

It is reasonable to assume that when the company used the definite expression "the Insured" in certain provisions of the policy and the more indefinite or general expression "any Insured" or "an Insured" in other provisions, it intended to cover differing situations which might come within the terms of the policy. *Shelby &c. Co.* v. *Lynch*, 89 N. H. 510, 512; *Standard &c. Ins. Co.* v. *Swift*, 92 N. H. 364, 367. We are of the opinion that the provisions excluding from liability coverage injuries intentionally caused by "the Insured" was meant to refer to a definite, specific insured, namely the insured who is involved in the occurrence which caused the injury and who is seeking coverage under the policy. *Employers &c. Ins. Co.* v. *Byers*, 99 N. H. 455, 457. Consequently the policy covers the named insureds, Thomas and Marjorie Lebrecht against liability for the intentional injury committed not by them but by their minor son who is an insured under the omnibus clause but who would be excluded from coverage as the insured under exclusion clause "c." *Hoyt* v. *Insurance Co.*, 92 N. H. 242; *Arenson* v. *National Automobile & Cas. Ins. Co.*, 45 Cal. 2d 81; See *Wenig* v. *Glens Falls Indemnity Co.*, 294 N. Y. 195.

This interpretation is not in conflict with the general rule that it is contrary to public policy to insure against liability arising directly against the insured from his willful wrong. *Haser* v. *Maryland Casualty Co.*, 78 N.D. 893, 900; *Sheehan* v. *Goriansky*, 321 Mass. 200. There is no such policy against insurance to indemnify an insured against the consequences of a violation of law by others without his direction or participation, or against his own negligence, or the negligence of others. 44 C.J.S., Insurance, *s.* 242 b, *pp.* 1005, 1006.

Furthermore the coverage provided by the omnibus clause is reasonably regarded as intended to benefit the named insureds by broadening the protection they are given by the policy. *Cal — Farm Ins. Co.* v. *Boisseranc*, 151 Cal. App. 2d 775, 782. There is no doubt that if their son Roger were not thus afforded coverage his parents would not be excluded from protection under the policy by their son's willful act. The intended benefit of the omnibus clause would be very illusory if it were used to restrict the rights which the named insureds would otherwise have. Such an interpretation should not be adopted unless it is compelled by the clear language of the policy, which is not the case here.

The Trial Court properly ruled that as to the actions instituted

against Thomas and Marjorie Lebrecht based on their negligent conduct coverage is not barred by the policy exclusion of injuries caused intentionally by the insured.

The company also maintains that the findings and rulings of the Trial Court could not be made on the record and that in any event they are insufficient as a matter of law to constitute an excuse for late notice. The Court ruled "that the notice was sufficient under the conditions existing." These conditions were found to be that the circumstances of the case were peculiar; that no demand was made prior to the bringing of the suits; and that the policyholders were not necessarily at fault in not anticipating these actions or in not realizing that there might be coverage. The Court also ruled "that the petitioner has not been prejudiced in any way so far as it appears on the pleadings."

The policy required that "when an occurrence takes place, written notice shall be given by or on behalf of the Insured to this Company or any of its authorized agents as soon as practicable." Such a policy requirement is commonly considered to require notice as soon as is reasonably possible under the circumstances of the case. *American Fidelity Co.* v. *Schemel*, 103 N. H. 190, 193. The assault of Barbara Getchell by Roger Lebrecht which gave rise to the suits against his parents by Barbara and her father occurred on May 9, 1959. The writs were brought on February 17, 1960 and were delivered to the company by the Lebrechts on February 20, 1960. This was the company's first notice of the assault and of the suits which followed.

The position of the Lebrechts is stated in their answer to the company's petition as follows: "they had no knowledge that their minor son, Roger Lebrecht, could be alleged to be their agent or servant at the time of the alleged assault and were justifiably ignorant of the existence of any legal relationship between them and their son which could be alleged to make them legally responsible for the alleged assault by their son. They gave notice to the plaintiff company 'as soon as practicable' in the light of the surrounding circumstances."

In arriving at its decision that Court considered, in addition to the original pleadings, the following facts contained in an amendment to the company's petition which was allowed by the Court. "Thomas B. Lebrecht and Marjorie R. Lebrecht shortly after the assault on May 9, 1959, discussed the incident with their son, Roger Lebrecht, and with investigating police officers and

with others and were fully apprised of all the facts and circumstances pertinent to the said assault. In fact . . . [they] consulted an attorney on numerous occasions immediately following the assault concerning the legal ramifications thereof . . . [they] were present at a hearing in Dover Municipal Court on May 11, 1959 . . . concerned with the said assault and . . . at a hearing at Strafford Superior Court on September 10, 1959."

Unless the circumstances are such that no reasonable man could find that notice was given as soon as was reasonably possible, the question of whether the policy requirements as to notice have been met is a question of fact for the Trial Court. *American Employers Ins. Co.* v. *Sterling,* 101 N. H. 434, 437. As the extenuating circumstances which are to be considered in determining whether delay in giving notice was reasonably excusable vary with each case, holdings in other cases are not necessarily determinative of the present controversy.

The company argues the justifiable ignorance that the assault committed by their son might make them legally responsible, alleged by the Lebrechts as a peculiar circumstance excusing their late notice, amounts to an erroneous concept of the law on their part and as a matter of law is not a legal excuse. *Malloy* v. *Head,* 90 N. H. 58. That case involved injuries inflicted on a minor by the insured's horse. On the very day of the accident the insured knew all the facts on which his liability might be predicated. The only reason advanced for a delay of ten months in giving notice was that the boy's father at the time of the accident told the insured that there was absolutely no blame, that it was purely an accident and that he would never hear any more about it. In the present case although the Lebrechts knew of the assault by their son the Trial Court could find that they were justifiably ignorant of any connection between that incident and the bringing up of their son on which a claim of liability against them might be based.

Also in the following cases relied on by the company all the elements of the occurrence including the nature of the conduct on which liability might be predicated were immediately known to the insured at the time of its happening. This was not so in the case before us. In *American Employers Ins. Co.* v. *Sterling,* 101 N. H. 434, the victim, a passenger in the insured's automobile, was injured when she leaped from the vehicle. The insured knew he had a duty to notify his insurer but sought to justify

his failure on the ground he did not know the extent of the injury and the amount of the medical bills. In *Employers Liability Corp.* v. *New Hampton School,* 103 N. H. 185, a student was struck by a discus thrown by a fellow student while he was a spectator at a track meet. The insured sought to justify the failure to give notice for over five years by the neglect of the insurer's general agent to advise the insured notice was necessary. In *American Fidelity Co.* v. *Schemel,* 103 N. H. 190, a patron was injured in a swimming pool in a park operated by the insured as a commercial venture. One of the reasons given to excuse a delay of one year and fifteen days in giving notice was that the insured understood his policy would provide him with protection if he had done something wrong and that "the insurance would take care of that" without a notice. *Ib.,* 194.

We cannot say as a matter of law that the Trial Court could not find the circumstances in the present case more akin to those in *Farm Bureau Ins. Co.* v. *Manson,* 94 N. H. 389. In that case the Trial Court found that a notice given about two months and ten days after the incident was given as soon as practicable when the insured reasonably believed that the accident was the concern of the Federal Government only. The Court could also find that the present case was similar to cases where the assured knows of the accident but is ignorant of the fact that his property or servant has been involved referred to in *Malloy* v. *Head, supra,* 62. The Trial Court could find that the Lebrechts were justified in not associating an intentional act of assault committed by their son with possible liability on their part for negligence in his upbringing and that the notice they gave the company when such a claim was made by the writs served on them was a reasonable compliance with the notice requirements of the policy. See *Hull* v. *Insurance Company,* 100 N. H. 387, 392.

Finally the company maintains that in basing its decision in whole or in part upon a finding that it was not prejudiced by delayed notice, the Trial Court has ignored the settled law of this jurisdiction that lack of prejudice is immaterial and is not to be considered in a determination of the policy's forfeiture and that delayed notice is prejudicial as a matter of law. We do not subscribe to the proposition that all notices of accidents which are not given immediately or within a short time after the accident are prejudicial to the insurer regardless of the circumstances.

We agree that if the Trial Court had found that the Lebrechts

breached the condition in the policy requiring that notice be given as soon as practicable the question of whether the insurer was prejudiced would be immaterial. *Glens Falls &c. Co.* v. *Keliher,* 88 N. H. 253, 261. However in this case the Trial Court found and ruled that the Lebrechts did not breach that condition of the policy. In arriving at that conclusion the Trial Court could properly consider "the character of the assured's conduct and the importance of its probable effect upon the interest of the insurer." *Id.*

*Exceptions overruled.*

All concurred.