Rockingham
No. 7959

COMMERCIAL UNION ASSURANCE COMPANIES

v.

TOWN OF DERRY
EDWIN C. SIMONSEN
BELLEFONTE INSURANCE COMPANY

June 27, 1978

*Devine, Millimet, Stahl & Branch,* of Manchester (*David H. Barnes* orally), for the plaintiff.

*Soule, Leslie & Bronstein,* of Salem (*Gerald M. Zelin* orally), for the defendant.

DOUGLAS, J.    This case concerns the interpretation of a liability insurance policy clause that limits coverage to accidents not intended or expected by the insured. The issue is whether the clause suspends the insurer's obligation to defend or indemnify the town of Derry in a suit arising from an allegedly intentional tort committed by a town employee who is also an insured under the policy. We find no suspension of coverage.

In 1974 a car driven by Edwin C. Simonsen collided with a police cruiser driven by Derry police officer Larry Hamer. Simonsen subsequently sued the town of Derry. The complaint alleged injury to person and property and claimed that Officer Hamer acted both negligently and intentionally. Commercial Union Assurance Companies insured the town under a comprehensive automobile liability policy, that limited coverage to accidents resulting in "bodily injury or property damage neither expected nor intended from the standpoint of the insured." On receipt of Simonsen's complaint, the town turned the matter over to its insurer, Commercial Union. Commercial

agreed to defend the negligence allegation but refused to cover the alleged intentional torts. In May 1975 the insurer petitioned Rockingham County Superior Court for a declaratory judgment under RSA 491:22 on the issue of coverage. The Master (*Leonard C. Hardwick*, Esq.) ruled that the policy did not cover intentional torts like those alleged in Simonsen's complaint. *Perkins*, J. approved the ruling and denied the town's motion for a rehearing. All exceptions were reserved and transferred to this court. We reverse.

This court will interpret ambiguous contract clauses. *See Protective Check Writer Co. v. Collins*, 92 N.H. 27, 30, 23 A.2d 770, 773 (1942). A clause is ambiguous when the contracting parties reasonably differ as to its meaning. *See* 3 A. Corbin, Contracts § 543A (Supp. 1971). When an insurance policy clause is ambiguous, we interpret that clause as would a reasonable and ordinarily intelligent layman in the position of the insured. *Brown v. Laconia*, 118 N.H. 376, 378, 386 A.2d 1276, 1277 (1978); *Aetna Ins. Co. v. State Motors, Inc.*, 109 N.H. 120, 125, 244 A.2d 64, 67 (1968); *Peerless Ins. Co. v. Clough*, 105 N.H. 76, 79, 193 A.2d 444, 446 (1963).

The ambiguous phrase at issue here is "the insured." It appears in the clause limiting coverage to accidents not intended or expected by "the insured." Commercial and Derry differ as to which "insured" parties are contemplated by the ambiguous phrase. Section II of the policy lists the "insured" parties.

II PERSONS INSURED

   (a) THE NAMED INSURED

   \* \* \* \*

   (c) ANY OTHER PERSON WHILE USING AN [AUTOMOBILE OWNED BY THE NAMED INSURED] . . . WITH THE PERMISSION OF THE NAMED INSURED, PROVIDED HIS . . . USE THEREOF IS WITHIN THE SCOPE OF SUCH PERMISSION. . . .

The town of Derry is the named insured, and Officer Hamer is clearly an additional insured under the omnibus clause, section II(c) of the policy.

Commercial Union interprets "the insured" to mean any insured. It would deny coverage whenever an intentional tort is alleged against any single insured. Derry contends that "the insured" refers only to the specific insured who was both involved in the alleged intentional tort *and* claims policy protection. Derry's interpretation excludes the alleged wrongdoer from coverage, but it continues coverage of those insureds who are innocent of the tort but are vicariously liable for

the acts of the tort-feasor. A reasonable insured would have understood the policy to provide coverage under the facts of this case.

In *Pawtucket Mutual Insurance Co. v. Lebrecht,* 104 N.H. 465, 190 A.2d 420 (1963), we first examined the phrase "the insured." In that case a homeowner's liability policy listed the householders, as named insureds, and included their minor son as an additional insured under a clause that extended coverage to minor children living in the household. That policy excluded coverage for "injury caused . . . intentionally by or at the direction of the insured." As a result of an intentional tort allegedly committed by the named insureds' son, suit was brought against the named insureds, alleging negligence in their controlling and upbringing of the minor. The insurer, citing the intentional injury exclusion clause, refused to defend or indemnify. The dispute focused on the phrase "the insured," and the interpretations of the phrase offered by the parties were precisely those now advanced by Commercial Union and Derry. This court determined that " 'the Insured' was meant to refer to a definite, specific insured, namely the insured who is involved in the occurence which caused the injury and who is seeking coverage under the policy." *Id.* at 468, 190 A.2d at 423. The facts here are essentially the same as those in *Pawtucket,* and we reach the same result.

■■ In interpreting an ambiguous phrase as it would be understood by the reasonable layman in the position of the insured, this court considers the instrument as a whole. *See Kilroe v. Troast,* 117 N.H. 598, 601, 376 A.2d 131, 133 (1977); *Griswold v. Heat Corp.,* 108 N.H. 119, 123, 229 A.2d 183, 186 (1967). We have said that "in construing a contract or other written instrument, we must assume that the words used were used advisedly and for the purpose of conveying some meaning." *McGinley v. John Hancock Mut. Life Ins. Co.,* 88 N.H. 108, 111, 184 A. 593, 595 (1936). An examination of Derry's policy reveals that "the insured" is not uniformly used to refer to insured parties; other clauses contain such phrases as "an insured" and "the named insured." This was also true in *Pawtucket.* Confronted with such an array of phrases, Derry might reasonably conclude that the insurer intended to provide for differing situations. *Pawtucket Mut. Ins. Co. v. Lebrecht,* 104 N.H. at 468, 190 A.2d at 422–23. It would be unreasonable to interpret "the insured" to include all parties insured under the policy when the more indefinite "an insured" is used elsewhere in the policy.

The presence of a clause extending coverage to persons other than the named insured renders the town's interpretation of "the insured"

all the more reasonable. The town is entitled, as were the Lebrechts in *Pawtucket,* to regard the omnibus clause as broadening the named insured's protection under the policy. *See id.,* 190 A.2d at 423. Named insureds are often potentially liable for the acts of other persons. When a liability policy extends coverage to persons for whom the named insured might be liable, the named insureds derive increased protection. *Cal-Farms Ins. Co. v. Boisseranc,* 151 Cal. App. 2d 775, 781, 312 P.2d 401, 405 (1957). "The intended benefit of the omnibus clause would be very illusory if it were used to restrict the rights which the named insureds would otherwise have. Such an interpretation should not be adopted unless it is compelled by the clear language of the policy. . . ." *Pawtucket Mut. Ins. Co. v. Lebrecht,* 104 N.H. at 468, 190 A.2d at 423. We find no language in the town's policy requiring such an interpretation.

Impliedly conceding for a moment that "the insured" may indeed refer only to the party claiming coverage, Commercial Union asks that we impute Officer Hamer's alleged intent to the town. Clearly, if the town intended the collision, there is no coverage. Commercial argues that because the town employs Hamer, it intends his act. Although an employer could be liable for the acts of its employees, *see* W. Prosser, Handbook of the Law of Torts § 70, at 464–66 (4th ed. 1971), such liability results vicariously, as a result of deliberate choice by courts to allocate the risk of employee misbehavior to the employer enterprise as a cost of doing business, *id.* § 69, at 459.

Finally, this court recognizes the public policy rule that an insured should not gain indemnity from his own wrongdoing. *Pawtucket Mut. Ins. Co. v. Lebrecht,* 104 N.H. at 468, 190 A.2d at 423; *see* Annot., 72 A.L.R.3d 1090, 1107 (1976). But no policy precludes a citizen from insuring against the consequences of an unauthorized willful wrong allegedly committed by another insured. *Pawtucket Mut. Ins. Co. v. Lebrecht, supra* at 468, 190 A.2d at 423; *Armstrong v. Security Ins. Group,* 292 Ala. 27, 288 S.2d 134 (1973).

The question is also raised whether Commercial Union must indemnify Derry for court costs and reasonable attorneys' fees incurred in this declaratory judgment proceeding. RSA 491:22-b (Supp. 1977) provides that "[i]n any action to determine coverage of an insurance policy pursuant to RSA 491:22, if the insured prevails in such action, he shall receive court costs and reasonable attorneys' fees from the insurer." Here the town "prevails." Costs

474

and reasonable attorneys' fees may be collected from Commercial using the standards set forth in *Couture v. Mammoth Groceries, Inc.*, 117 N.H. 294, 371 A.2d 1184 (1977).

*Exceptions sustained.*

BROCK, J., did not sit; the others concurred.