July 5, 1995 [NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

 

No. 94-2187

INTERNATIONAL ASSOCIATION OF MACHINISTS AND 
AEROSPACE WORKERS, DISTRICT LODGE NO. 38
HEALTH AND WELFARE FUND,

Plaintiff, Appellant,

v.

LINCOLN NATIONAL LIFE INSURANCE COMPANY,

Defendant, Appellee.

 

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge] 

 

Selya, Cyr and Stahl,

Circuit Judges. 

 

Jeffrey T. Edwards, with whom John J. Flaherty, Elizabeth J. 
Wyman and Preti, Flaherty, Beliveau & Pachios were on brief for 
appellant.
Harold J. Friedman, with whom Karen Frink Wolf, Jonathan M. 
Dunitz and Friedman & Babcock were on brief for appellee. 

 

 

Per Curiam. Appellant International Association of Per Curiam 

Machinists and Aerospace Workers, District Lodge No. 38 Health

and Welfare Fund ("Health and Welfare Fund" or "appellant"),

challenges a district court ruling that its Shared Fund Agreement

("Agreement") with Lincoln National Life ("Lincoln") unambiguous-

ly permitted Lincoln to retain certain monies upon termination of

their agreement. For the reasons hereinafter discussed, we

affirm.

I I

BACKGROUND BACKGROUND 

The Agreement was intended to implement appellant's

commitment to provide health insurance to the members of Lodge

No. 38 ("union members") by funding a reserve account from which

their medical claims were to be satisfied. The Agreement re-

quired appellant to remit to Lincoln a prescribed percentage of

the funds in the reserve account as a premium. Lincoln in turn

would pay all covered medical claims by union members from the

reserve account. A side agreement between appellant and Lincoln

provided for a Premium Stabilization Fund and an escrow account

to fund medical benefits to union members in the event the

Agreement itself were terminated.

The Agreement also stated that there would be an Annual

Experience Calculation at the end of each year. If the covered

medical claims against the Health and Welfare Fund amounted to

less than appellant's actual deposits into the reserve account,

the surplus would be refundable to appellant or placed in the

3

Premium Stabilization Fund at appellant's option. If the covered

medical claims against the Health and Welfare Fund exceeded the

amount set aside by appellant, Lincoln was permitted to recover

the deficit from the Premium Stabilization Fund. The present

dispute arises from the parties' disagreement over the contractu-

al consequences of a year-end deficit which could not be met with

monies in the Premium Stabilization Fund.

At the end of Policy Year Ten (October 31, 1990), the

deficit calculated in accordance with the procedures mandated in

the Agreement totalled $380,503. Since appellant failed to

satisfy the deficit, Lincoln carried it forward into Policy Year

Eleven. Following completion of the Annual Experience Calcula-

tion at the close of Policy Year Eleven, appellant once again

failed to satisfy the accumulated deficit and Lincoln carried a

$344,311 deficit into Policy Year Twelve. 

Appellant terminated the Agreement during Policy Year

Twelve. The accumulated deficit stood at $352,909. Since the

Premium Stabilization Fund had been depleted, Lincoln applied

$352,909 from the escrow account and remitted the $553,692

balance to appellant. Appellant thereupon instituted the present

action to recover the $352,909 previously applied to the accumu-

lated deficit by Lincoln. 

In order to determine whether deficits could be

carried over into subsequent years, the district court proposed

to bifurcate the proceedings. First, it would decide on a

stipulated record whether the language of the Agreement plainly

4

governed year-end deficit carryovers. If not, it would conduct

an evidentiary hearing on the parties' course of dealing. As it

turned out, the district court ruled that the Agreement unambigu-

ously provided that deficits were to be carried over until

satisfied. Accordingly, it entered summary judgment for Lincoln,

and the Health and Welfare Fund appealed.

II II

DISCUSSION1 DISCUSSION 

Whether a contractual term is ambiguous is a question

of law which we review de novo. Jimenez v. Peninsular & Oriental 

Steam Navigation Co., 974 F.2d 221, 223 (1st Cir. 1992) (collect- 

ing cases); In re Navigation Tech. Corp., 880 F.2d 1491, 1495 

(1st Cir. 1989) (applying New Hampshire law). "Contract language

is considered ambiguous where the contracting parties reasonably

differ as to its meaning." Id. (quoting Commercial Union Assur. 

Cos. v. Town of Derry, 118 N.H. 469, 471, 387 A.2d 1171 (1978), 

overruled on other grounds, American Home Assur. Co. v. Fish, 122 

N.H. 711, 451 A.2d 358 (1982)). Whenever possible, all contract

terms must be given reasonable effect and all unambiguous terms

must be given their plain meaning. Commercial Union Ins. Co. v. 

Walbrook Ins. Co., 7 F.3d 1047, 1052-53 (1st Cir. 1993). The 

introduction of extrinsic evidence is appropriate only on a

preliminary showing that the terms of the contract are ambiguous.

Richey v. Leighton, 632 A.2d 1215, 1217 (N.H. 1993); In re 
 

1The parties agree that the substantive law of New Hampshire
governs their dispute.

5

Navigation Tech., 880 F.2d at 1495 (citing MacLeod v. Chalet 

Suisse Int'l, Inc., 401 A.2d 205, 209 (1979)).  

Section I(A) of the Agreement states:

Annual Experience Calculation means the cal-
culation completed at the end of each Policy
Year whereby the amounts of premiums paid by
the Policyholder during that Policy Year are
offset by 1) the amount of Claims paid by
Lincoln National under the Plan, 2) Lincoln
National's retention and 3) any deficit re-
maining from the prior Policy Year.

Section IV (B) of the Agreement states:

At the end of a Policy Year deficits will be
carried forward in the Annual Experience
Calculation for succeeding years until the
deficit is eliminated.2

Section V of the Agreement states:

B. Upon termination of the Policy(ies) or
the termination of this agreement the
Policy holder will pay the following
amount to Lincoln National:

. . . .

4. any deficit amount payable
from the Annual Experience Calcula-
tion for the Policy Year ending on
the termination date.

. . . .

D. . . . The charges applied to the maximum
terminal liability3 amount are:
 

2Similarly, Section IV(A) provides that if the Annual Ex-
perience Calculation indicates an overpayment by the Health and
Welfare Fund, "the excess amount may be payable to the Policy-
holder as a refund."

3Section V(D) defines "maximum terminal liability" as 22% of
the Equivalent Conventional Premium for the twelve-month period
immediately before termination plus the amount of medical bene- 
fits that clear after termination, claim processing charges
applicable to checks issued after termination, interest charges

6

- any deficit amount payable
from the Annual Experience
Calculation for the Policy
Year ending on the termination
date.

Appellant contends that the Agreement provides that

deficits were to be recouped by increasing premiums in subsequent 

policy years. Moreover, appellant argues, even if the Agreement

does not plainly support this contention, it is at least ambigu-

ous on this point; therefore, remand is necessary to permit

extrinsic evidence on the parties' understanding. 

We reject appellant's interpretation for three reasons.

First, it is unsupported by the language of the Agreement.

Second, it would render nugatory both the contract language

providing for deficits to be carried over and the language

requiring that the Annual Experience Calculation take into

account any unpaid deficit from a prior year. Bosse v. Litton 

Unit Handling Sys., 646 F.2d 689, 694 (1st Cir. 1984) ("It is 

axiomatic that constructions which render contract terms meaning-

less or futile are to be avoided.") (applying N.H. law). Third,

viewed through any lens but its own, appellant's interpretation

is highly implausible, since it would permit appellant to recover

its premium overpayments, see note 2 supra, yet escape payment of 

unsatisfied deficits by terminating the agreement at the end of a

policy year. See Green Mountain Ins. Co. v. George, 634 A.2d 

1011, 1015 (N.H. 1993) (differing interpretations which are not
 

for funding medical benefits after termination and any deficit 
amount payable from the Annual Experience Calculation for the 
Policy Year ending on the termination date. 

7

reasonable do not give rise to cognizable ambiguity); Jimenez, 

974 F.2d at 223 (contract terms must be given reasonable inter-

pretation).4

Appellant contends further that the term "deficit" is

ambiguous, noting that it is used in two different places and

defined in slightly different terms. Throughout the Agreement,

however, the term "deficit" is used to refer to the difference

between the amount of money Lincoln paid on union member medical

claims and the amount appellant has paid Lincoln to satisfy those

claims. Appellant posits no sound reason for giving the language

of the Agreement any other meaning. See Commercial Union, 7 F.3d 

at 1052-53.

The district court judgment is affirmed.  

 

4Appellant points to its nonpayment of year-end deficits for
Policy Years Ten and Eleven as support for its interpretation.
Section IV(B), immediately prior to providing for deficit carry-
overs, states that nonpayment of any amount due within thirty-one
days of demand automatically terminates the contract. Appellant
contends that the fact the agreement was not terminated by
Lincoln demonstrates that both parties understood the deficit
would be paid down through premium increases in subsequent years.
As this argument is raised for the first time on appeal, we
decline to consider it. McCoy v. M.I.T., 950 F.2d 13, 22 (1st 
Cir. 1991), cert. denied, 504 U.S. 910 (1992) (arguments not 
presented to the district court not preserved for appeal). We
note, nonetheless, that an insurer "may waive provisions . . .
placed in [the policy] for the insurer's benefit," without
waiving the underlying right to demand payment. Gaillien v. 
Connecticut Gen. Life Ins. Co., 49 F.3d 878, 884 (2d Cir. 1995) 
(quoting 16B John A. Appleman & Jean Appleman, Insurance Law and 
Practice 9081, at 498 (1981) (collecting cases)).  

8