USCA1 Opinion

 

 July 5, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-2187 INTERNATIONAL ASSOCIATION OF MACHINISTS AND  AEROSPACE WORKERS, DISTRICT LODGE NO. 38 HEALTH AND WELFARE FUND, Plaintiff, Appellant, v. LINCOLN NATIONAL LIFE INSURANCE COMPANY, Defendant, Appellee.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________  ____________________ Selya, Cyr and Stahl, Circuit Judges. ______________  ____________________ Jeffrey T. Edwards, with whom John J. Flaherty, Elizabeth J. ___________________ _________________ ____________ Wyman and Preti, Flaherty, Beliveau & Pachios were on brief for _____ ______________________________________ appellant. Harold J. Friedman, with whom Karen Frink Wolf, Jonathan M. ___________________ _________________ ____________ Dunitz and Friedman & Babcock were on brief for appellee. ______ __________________  ____________________  ____________________ Per Curiam. Appellant International Association of Per Curiam ___________ Machinists and Aerospace Workers, District Lodge No. 38 Health and Welfare Fund ("Health and Welfare Fund" or "appellant"), challenges a district court ruling that its Shared Fund Agreement ("Agreement") with Lincoln National Life ("Lincoln") unambiguous- ly permitted Lincoln to retain certain monies upon termination of their agreement. For the reasons hereinafter discussed, we affirm. I I BACKGROUND BACKGROUND __________ The Agreement was intended to implement appellant's commitment to provide health insurance to the members of Lodge No. 38 ("union members") by funding a reserve account from which their medical claims were to be satisfied. The Agreement re- quired appellant to remit to Lincoln a prescribed percentage of the funds in the reserve account as a premium. Lincoln in turn would pay all covered medical claims by union members from the reserve account. A side agreement between appellant and Lincoln provided for a Premium Stabilization Fund and an escrow account to fund medical benefits to union members in the event the Agreement itself were terminated. The Agreement also stated that there would be an Annual Experience Calculation at the end of each year. If the covered medical claims against the Health and Welfare Fund amounted to less than appellant's actual deposits into the reserve account, the surplus would be refundable to appellant or placed in the 3 Premium Stabilization Fund at appellant's option. If the covered medical claims against the Health and Welfare Fund exceeded the amount set aside by appellant, Lincoln was permitted to recover the deficit from the Premium Stabilization Fund. The present dispute arises from the parties' disagreement over the contractu- al consequences of a year-end deficit which could not be met with monies in the Premium Stabilization Fund. At the end of Policy Year Ten (October 31, 1990), the deficit calculated in accordance with the procedures mandated in the Agreement totalled $380,503. Since appellant failed to satisfy the deficit, Lincoln carried it forward into Policy Year Eleven. Following completion of the Annual Experience Calcula- tion at the close of Policy Year Eleven, appellant once again failed to satisfy the accumulated deficit and Lincoln carried a $344,311 deficit into Policy Year Twelve.  Appellant terminated the Agreement during Policy Year Twelve. The accumulated deficit stood at $352,909. Since the Premium Stabilization Fund had been depleted, Lincoln applied $352,909 from the escrow account and remitted the $553,692 balance to appellant. Appellant thereupon instituted the present action to recover the $352,909 previously applied to the accumu- lated deficit by Lincoln.  In order to determine whether deficits could be carried over into subsequent years, the district court proposed to bifurcate the proceedings. First, it would decide on a stipulated record whether the language of the Agreement plainly 4 governed year-end deficit carryovers. If not, it would conduct an evidentiary hearing on the parties' course of dealing. As it turned out, the district court ruled that the Agreement unambigu- ously provided that deficits were to be carried over until satisfied. Accordingly, it entered summary judgment for Lincoln, and the Health and Welfare Fund appealed. II II DISCUSSION1 DISCUSSION __________ Whether a contractual term is ambiguous is a question of law which we review de novo. Jimenez v. Peninsular & Oriental __ ____ _______ _____________________ Steam Navigation Co., 974 F.2d 221, 223 (1st Cir. 1992) (collect- ____________________ ing cases); In re Navigation Tech. Corp., 880 F.2d 1491, 1495 ______________________________ (1st Cir. 1989) (applying New Hampshire law). "Contract language is considered ambiguous where the contracting parties reasonably differ as to its meaning." Id. (quoting Commercial Union Assur. ___ _______________________ Cos. v. Town of Derry, 118 N.H. 469, 471, 387 A.2d 1171 (1978), ____ ______________ overruled on other grounds, American Home Assur. Co. v. Fish, 122 __________________________ ________________________ ____ N.H. 711, 451 A.2d 358 (1982)). Whenever possible, all contract terms must be given reasonable effect and all unambiguous terms must be given their plain meaning. Commercial Union Ins. Co. v. _________________________ Walbrook Ins. Co., 7 F.3d 1047, 1052-53 (1st Cir. 1993). The __________________ introduction of extrinsic evidence is appropriate only on a preliminary showing that the terms of the contract are ambiguous. Richey v. Leighton, 632 A.2d 1215, 1217 (N.H. 1993); In re ______ ________ ______  ____________________ 1The parties agree that the substantive law of New Hampshire governs their dispute. 5 Navigation Tech., 880 F.2d at 1495 (citing MacLeod v. Chalet ________________ _______ ______ Suisse Int'l, Inc., 401 A.2d 205, 209 (1979)).  __________________ Section I(A) of the Agreement states: Annual Experience Calculation means the cal- culation completed at the end of each Policy Year whereby the amounts of premiums paid by the Policyholder during that Policy Year are offset by 1) the amount of Claims paid by Lincoln National under the Plan, 2) Lincoln National's retention and 3) any deficit re- maining from the prior Policy Year. Section IV (B) of the Agreement states: At the end of a Policy Year deficits will be carried forward in the Annual Experience Calculation for succeeding years until the deficit is eliminated.2 Section V of the Agreement states: B. Upon termination of the Policy(ies) or the termination of this agreement the Policy holder will pay the following amount to Lincoln National: . . . . 4. any deficit amount payable from the Annual Experience Calcula- tion for the Policy Year ending on the termination date. . . . . D. . . . The charges applied to the maximum terminal liability3 amount are:  ____________________ 2Similarly, Section IV(A) provides that if the Annual Ex- perience Calculation indicates an overpayment by the Health and Welfare Fund, "the excess amount may be payable to the Policy- holder as a refund." 3Section V(D) defines "maximum terminal liability" as 22% of the Equivalent Conventional Premium for the twelve-month period immediately before termination plus the amount of medical bene- ____ fits that clear after termination, claim processing charges applicable to checks issued after termination, interest charges 6 - any deficit amount payable from the Annual Experience Calculation for the Policy Year ending on the termination date. Appellant contends that the Agreement provides that deficits were to be recouped by increasing premiums in subsequent __________ policy years. Moreover, appellant argues, even if the Agreement does not plainly support this contention, it is at least ambigu- ous on this point; therefore, remand is necessary to permit extrinsic evidence on the parties' understanding.  We reject appellant's interpretation for three reasons. First, it is unsupported by the language of the Agreement. Second, it would render nugatory both the contract language providing for deficits to be carried over and the language requiring that the Annual Experience Calculation take into account any unpaid deficit from a prior year. Bosse v. Litton _____ ______ Unit Handling Sys., 646 F.2d 689, 694 (1st Cir. 1984) ("It is ___________________ axiomatic that constructions which render contract terms meaning- less or futile are to be avoided.") (applying N.H. law). Third, viewed through any lens but its own, appellant's interpretation is highly implausible, since it would permit appellant to recover its premium overpayments, see note 2 supra, yet escape payment of ___ _____ unsatisfied deficits by terminating the agreement at the end of a policy year. See Green Mountain Ins. Co. v. George, 634 A.2d ___ ________________________ ______ 1011, 1015 (N.H. 1993) (differing interpretations which are not  ____________________ for funding medical benefits after termination and any deficit ___ _______ amount payable from the Annual Experience Calculation for the ______ _______ ____ ___ ______ ______________________ ___ ___ Policy Year ending on the termination date. ______ ____ ______ __ ___ ___________ ____ 7 reasonable do not give rise to cognizable ambiguity); Jimenez, _______ 974 F.2d at 223 (contract terms must be given reasonable inter- pretation).4 Appellant contends further that the term "deficit" is ambiguous, noting that it is used in two different places and defined in slightly different terms. Throughout the Agreement, however, the term "deficit" is used to refer to the difference between the amount of money Lincoln paid on union member medical claims and the amount appellant has paid Lincoln to satisfy those claims. Appellant posits no sound reason for giving the language of the Agreement any other meaning. See Commercial Union, 7 F.3d ___ ________________ at 1052-53. The district court judgment is affirmed.  ________  ____________________ 4Appellant points to its nonpayment of year-end deficits for Policy Years Ten and Eleven as support for its interpretation. Section IV(B), immediately prior to providing for deficit carry- overs, states that nonpayment of any amount due within thirty-one days of demand automatically terminates the contract. Appellant contends that the fact the agreement was not terminated by Lincoln demonstrates that both parties understood the deficit would be paid down through premium increases in subsequent years. As this argument is raised for the first time on appeal, we decline to consider it. McCoy v. M.I.T., 950 F.2d 13, 22 (1st _____ ______ Cir. 1991), cert. denied, 504 U.S. 910 (1992) (arguments not _____ ______ presented to the district court not preserved for appeal). We note, nonetheless, that an insurer "may waive provisions . . . placed in [the policy] for the insurer's benefit," without waiving the underlying right to demand payment. Gaillien v. ________ Connecticut Gen. Life Ins. Co., 49 F.3d 878, 884 (2d Cir. 1995) _______________________________ (quoting 16B John A. Appleman & Jean Appleman, Insurance Law and _________________ Practice 9081, at 498 (1981) (collecting cases)).  ________ 8